Sobel, Appellant, *v.* Sobel.

Argued April 25, 1969. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*Samuel Kravitz,* with him *Samuel H. High, Jr.,* and *High, Swartz, Roberts & Seidel,* for appellant.

*Cassin W. Craig,* with him *Rosemary M. Flannery, Abraham L. Shapiro,* and *Wisler, Pearlstine, Talone & Gerber,* and *Cohen, Shapiro, Berger, Polisher and Cohen,* for appellees.

OPINION BY MR. JUSTICE O'BRIEN, June 27, 1969:

Appellant, Sidney Sobel, commenced an action in equity, seeking to set aside certain gifts made by him to his three minor daughters. The suit named the three daughters, Andrea, Pauline and Marilyn, and their mother, Helen, as defendants, as well as the Philadelphia Saving Fund Society, where the funds constituting the gifts were on deposit. The Chancellor's adjudication and decree nisi dismissed appellant's complaint, and his exceptions were overruled by the court en banc, which ordered that the decree nisi be entered as a final decree. This appeal followed.

Appellant, who had been divorced from his wife, Helen Sobel, and who had subsequently remarried, purchased three blocks of A & P common stock in his name as trustee for the benefit of each of his three daughters. These daughters were born of appellant's marriage to Helen Sobel and were his only children. In April, 1963, appellant liquidated the A & P stock and received for it three checks payable as follows: (1) Sidney Sobel, Trustee for Andrea Sobel, $23,-537.65; (2) Sidney Sobel, Trustee for Pauline Sobel, $23,585.12; (3) Sidney Sobel, Trustee for Marilyn Sobel, $23,537.65. Appellant determined to use these checks to set up irrevocable trusts to provide for the welfare of his three daughters. On April 29, 1963, he delivered these checks to an attorney who was a family friend and expressed his desire that the attorney de-

posit the money in bank accounts in the names of his three children. The checks were endorsed to be paid to the order of each of his daughters. The checks were deposited in three separate bank accounts, each in the name of one of appellant's daughters, and the attorney informed appellant of the action taken by letter, which letter was answered by appellant on May 1, 1963, expressing his appreciation for the attorney's cooperation.

Appellant sought to set these gifts aside on the basis that he was not mentally competent to make the gifts. The sole issue requiring determination is whether, on the date in question, the appellant had the mental competency and capability to make a valid gift inter vivos to his three minor daughters. The evidence discloses that appellant had suffered great mental stress resulting from business and domestic problems. He had been a patient at the Philadelphia Psychiatric Hospital for short periods in October, 1957; August, 1959; October, 1960; and March of 1963. The alleged gifts took place on April 29, 1963. Subsequently, appellant was a patient at the Philadelphia Psychiatric Hospital in July and August of 1963, after which he became a patient at Chestnut Lodge, a private rest home, from August of 1963 until July of 1965. He was adjudged incompetent by the Orphans' Court of Philadelphia on October 8, 1963, and adjudged competent by that Court on October 11, 1965.

In *Girsh Trust*, 410 Pa. 455, 189 A. 2d 852 (1963), a case involving an attempt to rescind an inter vivos deed of trust, Mr. Justice JONES, speaking for a unanimous court, precisely detailed the requirements and burdens for establishing competency or the lack thereof in situations such as the case at bar. We there said that where mental competency is at issue, the real question is the condition of the person at the

very time he executed the instrument or made the gift in question. We further held that although competency is presumed and the burden is upon him who seeks to establish otherwise, the presentation of evidence tending to show lack of competency for a reasonable time before and after the critical time shifts the burden of proof to the person who alleges that the transaction occurred during an interval when the person was mentally competent. We further held that a person's mental capacity is best determined by his spoken words and his conduct, and that the testimony of persons who observed such conduct on the date in question outranks testimony as to observations made prior to and subsequent to that date.

With these general standards in mind, the Chancellor found that appellant had not met his initial burden of overcoming the presumption of competency. The Chancellor's conclusion was based upon the testimony of appellant's witnesses, primarily that of the psychiatrist who treated him during the period involved. The Chancellor found the psychiatrist's testimony unconvincing and somewhat equivocal. The appellant was not shown to have been incompetent to operate his substantial business or make important decisions in connection therewith, a factor which weighed heavily in the Chancellor's findings.

Moreover, even if the burden of establishing lucidity were shifted to the appellees, the Chancellor found that they had clearly met that burden. Using the guidelines detailed in *Girsh Trust,* supra, the Chancellor relied heavily upon the testimony of the attorney who established the bank accounts. He talked to, questioned, and observed the conduct of appellant on the date in question and testified unequivocally, that appellant was calm, rational, and appeared to know exactly what he was doing.

In addition, these children were natural objects of appellant's bounty, and his gifts to them, although substantial, did not come near pauperizing him, being in the neighborhood of one-third of his not insubstantial holdings. Moreover, at the time of the making of the gifts, appellant was experiencing domestic difficulties with his then wife and had expressed the fear that she might somehow get her hands on his assets. This circumstance lends additional credence to the conclusion that appellant was seeking to protect the interests of his daughters by making gifts to them.

There is no need to examine in any greater detail the record in this case. The Chancellor's findings of fact were approved by the court en banc, and in such instances will not be reversed on appeal where the record sustains those findings. In the instant case, the Chancellor's findings of fact are amply supported by the record. His conclusions of law necessarily follow.

Decree affirmed, costs to be borne by appellant.