556 A.2d 819

**Walter Paul WEIR, An Incompetent, Deceased, by Patricia Weir GASPER, His Guardian, Appellant,**

v.

**ESTATE OF Aventino CIAO, Deceased, Appellee.**

Supreme Court of Pennsylvania.

Argued Dec. 7, 1988.

Decided March 15, 1989.*

* This decision was considered and rendered prior to March 7, 1989.

494

Alfred A. Gollatz, West Chester, Donna Bailey McCarthy, Philadelphia, for appellant.

William H.R. Casey, Doylestown, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and STOUT, JJ.

McDERMOTT, Justice.

Patricia Weir Gasper, guardian of the person and present guardian of the estate of her late father, Walter Paul Weir, appeals from an order of the Superior Court, 364 Pa.Super. 490, 528 A.2d 616, which affirmed an order of the Court of Common Pleas of Delaware County. The Court of Common Pleas dismissed her petition to set aside two *inter vivos* transfers of real estate by and from her father to respondent, Aventino Ciao, his son-in-law. The factual history of the case is set out below.

In 1964, Mary Weir, the daughter of Walter Paul Weir and his wife Isabella, married Aventino Ciao. After their marriage the Ciaos made their home in the Delaware County residence of the Weirs. This arrangement lasted until Mary's death in 1975.

During their vacations and on weekends the Weirs and the Ciaos shared a house in Wildwood, New Jersey. Mary and her sister, Patricia Weir Gasper, appellant here, owned one-half interests in the Wildwood property, having inherited the house from their paternal grandfather. The Ciaos contributed to the upkeep of the vacation house. They also provided a substantial portion of the furnishings of the Delaware County residence and participated in paying the costs of its maintenance and operating expenses.

Upon the death of Mary Weir Ciao in 1975, Aventino Ciao inherited her interest in the Wildwood property. One month after Mary's death, Aventino Ciao and Patricia Weir Gasper transferred their interests in the property to Walter Paul Weir and his wife. The transfer of the property was effected at the insistence of Patricia Weir Gasper, without consideration, when she and her husband drove Mr. Ciao to a notary public's office on an evening within a few weeks of Mary Weir Ciao's death and he and Mrs. Gasper conveyed their interests to her parents.

Following Mary's death, Aventino Ciao continued to make his home with the Weirs. Mr. Ciao continued to live with the Weirs through the death of Isabella Weir in 1976, and into 1977. At that time, Patricia Weir Gasper insisted that

he move out and Mr. Ciao complied. On his departure, Mr. Ciao left the furnishings and effects which belonged to him and for which he neither asked nor received reimbursement. Patricia Weir Gasper and her husband then moved into her father's home.

In the years between 1977 and 1981, Aventino Ciao and his father-in-law continued to meet at the latter's call. Mr. Ciao testified and the trial court found that the relationship between the two was like that between a father and son. Ciao testified that during these meetings the two visited their wives' graves, the Fraternal Order of Police (Mr. Weir was a retired Philadelphia Policeman), and the Holmes Garage, which they used as a meeting place in the neighborhood.

In the fall of 1981, Walter Paul Weir asked Mr. Ciao to take him to a lawyer, so that he might set his affairs in order. At the time he expressed a desire to reconvey the Wildwood property to Mr. Ciao since he was of the opinion that the latter had been taken advantage of by Mrs. Gasper when he transferred his interest in the property to the Weirs after Mary's death. He also expressed a desire to transfer the Delaware County home to Mr. Ciao since Ciao had no house of his own but was living in an apartment. At that time Patricia Weir Gasper owned a property in the neighborhood.

Mr. Ciao took Mr. Weir to consult with Neil Leibman, Esquire. Ciao had sought Liebman's counsel himself in 1976, when he was having second thoughts after conveying his interest in the Wildwood property to the Weirs. Liebman advised Ciao at that time that an attempt to set aside the transfer would likely prove fruitless and Ciao desisted.

The initial meeting took place on a Sunday morning in late summer or early fall of 1981, in Liebman's office out of Ciao's presence. Liebman testified at trial that he interviewed Weir and determined that he was oriented in time, place and person. Liebman found Weir's memory intact, that he was aware of his estate, and that he freely expressed a desire to make the transfers at issue and the

reasons moving him. Weir also requested that Liebman draw up his will. He requested that privacy be maintained over the transactions since he was concerned that if his daughter learned of them she would throw him out of the house.

Liebman drew up two deeds and a will according to Weir's instructions. The deeds immediately transferred ownership of the Wildwood property to Ciao in fee, and a joint tenancy with right of survivorship in the Delaware County home. Weir retained a joint tenancy and control of the home in which he lived and ownership and control over his other assets which included cash, bank accounts and an automobile. With the exception of the automobile, which he left to a mechanic at the Holmes Garage, the will left these assets to Mr. Ciao.

In the spring of 1982, Mrs. Gasper discovered the transfers. Walter Weir Jr., the son of Walter Paul Weir, Sr., petitioned the Court of Common Pleas of Delaware County to have his father declared incompetent. On July 12, 1982, the court granted the petition and appointed Mrs. Gasper the guardian of her father's person and estate. The court relied on the report of an appointed psychiatrist, Leo Freeman M.D., who had examined Mr. Weir on June 5, 1982, and found that he was suffering from Alzheimer's disease, which disease is characterized by progressive organic brain deterioration. Mrs. Gasper then brought this action to set aside the two conveyances here at issue. She alleged, *inter alia*, that her father was mentally incompetent at the time of the transfers, and that Mr. Ciao had overreached and taken advantage of a confidential relationship which he enjoyed with Mr. Weir. In a decree *nisi*, the trial court denied her petition.

In post trial motions Mrs. Gasper alleged fifty-one errors in the court's sixty findings of fact, claiming basically that they were unsupported by the evidence. She also alleged five errors in the court's six conclusions of law, claiming that they were not supported by the law.

Mr. Weir died on November 18, 1984. In December of 1984, counsel to Mr. Weir's estate discovered and brought to Mrs. Gasper's attention a notarized statement which was found in the office of Richard Cryer, Mr. Weir's insurance agent. It was dated August 27, 1981, and stated: "Under no circumstances is name to be changed from Walter Weir without his consent." In an affidavit a secretary in the agency, Alvera Crocetto, stated that Mr. Weir appeared at the agency on that date and dictated the statement to her and that he asked that it be kept in his file. The affiant quoted Mr. Weir as having stated that he thought someone was trying to take his property away from him and he did not want the name on his home owner's insurance policy changed. She stated further that Mr. Weir signed the written statement, which was put in his file and which was notarized by Richard Cryer on September 18, 1981, not the date of its execution by Mr. Weir.

Mrs. Gasper submitted a notarized copy of the statement and the affidavit in a supplementary brief and at a hearing on her post-trial motions filed with the trial court on June 3, 1985. In her supplementary brief she argued that this after-discovered evidence justified an award of a new trial. However, it must be noted that Mrs. Gasper did not request permission to amend or to supplement her post trial motions to include a request that the evidence be considered.

The trial court on September 10, 1986, dismissed Mrs. Gasper's post-trial motions and entered a final decree. In the opinion accompanying the final decree the chancellor addressed each of Mrs. Gasper's claims of factual error and found them either meritless or the error *de minimus*. The court further found that Mrs. Gasper's attributions of error to its conclusions of law were waived for failure to address them with specificity in her memorandum of law. *See* Pa.R.Civ.P.R. 227.1. The opinion made no mention of the after-discovered evidence question.

Regarding the evidence the trial court restated its findings as follows:

In the instant matter we found that testimony and demeanor of Aventino Ciao to be straight forward and truthful, and therefore worthy of belief. We found the testimony of Patricia Weir Gasper and Walter Weir, Jr. was not straightforward. They were hesitant, vague and self serving. We concluded from this entire record under all these circumstances that their testimony is entitled to little weight.

On appeal to the Superior Court Mrs. Gasper asserted that the trial court erred in the following manner: failing to find a confidential relationship between Weir and Ciao; finding Mr. Weir competent at the time of the conveyances; and refusing to consider the after-discovered evidence.

The Superior Court found the issue of the confidential relationship waived as not asserted in post-trial motions. *Weir By Gasper v. Ciao*, 364 Pa.Super 490, 528 A.2d 616 (1987). It entertained the remaining questions as properly preserved but found them meritless. *Id.* As a consequence the decree was affirmed. Mrs. Gasper then petitioned this court for leave to appeal and we granted her petition.

■ In this appeal Mrs. Gasper first asserts that Neil Liebman was Ciao's counsel at the time of the conveyances and failed to disclose the fact of his representation to Weir in a matter adverse to the latter's interest in the Wildwood property. She concludes that since the interests of the parties were therefore in conflict, the trial court abused its discretion in crediting Liebman's testimony on the question of Weir's competence. In addition, she faults the trial court's determination of Weir's competence as a matter of law.

In support of her first contention appellant argues that Liebman violated Canon 4 of the Code of Professional Responsibility,[1] specifically, Ethical Consideration 4–6 under

1. By order of October 16, 1987, we adopted the rules of Professional Conduct effective April 1, 1988, and gave them prospective effect. Our order provided that misconduct on or before March 31, 1988 would continue to be governed by the Code of Professional Responsibility.

Disciplinary Rule 4–101 which provides in pertinent part: "A lawyer should preserve the confidences and secrets of a client" and that the obligation continues after the termination of his employment. In addition, she alleges that attorney Liebman never ceased representing Ciao, but was in fact serving his interest while claiming to be Weir's lawyer, contrary to canons 5, 7 and the statements of this Court in *Slater v. Rimar Inc.*, 462 Pa. 138, 338 A.2d 584 (1975). She concludes that Liebman's conflicting interests denied his trial testimony credibility and the trial court abused its discretion in relying on it.

In *Slater* we stated: "It is the duty of a lawyer to preserve the confidences of his client and to refrain from representing conflicting interests except by express consent of all concerned after full disclosure of the facts." *Id.*, 462 Pa. at 145, 338 A.2d at 587. The conduct condemned in *Slater* was that of an attorney who represented a shareholder in a derivative action against two corporations and their principal shareholder. The substance of the complaint was an alleged fraudulent transaction, knowledge of which was acquired by the Plaintiff's attorney as counsel for the defendants. That case is readily distinguishable from the present case. The record here discloses that at the time of the conveyances Mr. Ciao had no interest [2] in either of the properties. He never had any claim to the Delaware County home and he abandoned whatever claim he may once have had in the Wildwood property pursuant to Liebman's advice five years earlier. Furthermore, the record does not even suggest that prior to these transfers Liebman ever "represented" [3] either of the parties in any action, litigation, or process as appellant claims, unlike the attorney in *Slater*.

2. *Interest* ... The most general term that can be employed to denote a right, claim, title or legal share in something... Black's Law Dictionary 729 (5th ed. 1979)

3. *Represent* ... To represent a person is to stand in his place; to speak or act with authority on behalf of such person; to supply his place; to act as his substitute or agent ... Black's Law Dictionary 1169 (5th ed 1979)

Appellant's interpretation of the facts of this case as analogous to those in *Slater* would characterize a gift as an adversary proceeding. Such an interpretation would place in opposition some interest of the donee and an interest of the donor; the antithesis of that which the law recognizes a gift to be. There was no conflict of interest which would serve to discredit Liebman's testimony as interested. The trial court did not abuse its discretion in considering it.

With respect to the second of appellant's objections to admission of Liebman's testimony, she maintains that the trial court erred in accepting attorney Liebman's opinion as to Weir's competence rather than the testimony of Dr. Leo Freeman, who was board-certified in geriatric psychiatry and an expert witness, and who testified that Mr. Weir was suffering from Alzheimer's disease when he examined him on June 5, 1982, approximately seven months after the conveyances. Dr. Freeman stated that Mr. Weir acknowledged and he found that at times the former was seriously confused as a result of the brain cell deterioration caused by the progressive advance of the disease. However, Dr. Freeman did note that at the time of the examination, Mr. Weir was oriented in time, place and person and had little difficulty in achieving his goal ideas. He stated in response to a hypothetical question that his opinion on the ultimate issue was that Mr. Weir was incompetent at the time of the conveyances. However, he also acknowledged that despite the effects of the disease there would have been times when Mr. Weir was lucid.

Attorney Liebman had testified that he first met with Weir for approximately one hour out of Ciao's presence. During the meeting he conducted an examination to determine Weir's competence. He stated that the answers which Mr. Weir gave to questions and other tests he conducted indicated to him that Mr. Weir was legally competent in that he was oriented in time, place and person, aware of his assets and aware of his children. Liebman explained that it

was his normal practice that if there were some question of competence he would first refer the client to a psychiatrist, but that in this case he did not feel that such was indicated, based on his observations. As a result he prepared the two deeds for execution.

Appellant argues that the trial court's determination that Weir was competent was in conflict with *dicta* of this court in *Der Hagopian v. Eskandarian*, 396 Pa. 401, 153 A.2d 897 (1959) *cert. denied*, 361 U.S. 938, 80 S.Ct. 381, 4 L.Ed.2d 358 (1960) wherein it was stated:

...[W]e can take judicial notice of the fact that not all forms of mental illness hit one like a bolt of lightening, but are often a matter of growth and clouding over ... Expert testimony is needed when transactions fall within the penumbra between competence and incompetence when the light of reason may come and go unbidden.

*Id.*, 396 Pa. at 404, 153 A.2d at 899.

Written instruments are not to be set aside except upon convincing testimony that their execution was tainted with fraud, either actual or constructive, or that the person so executing them did not have what the law considers sufficient mental capacity to do so. *Union Trust Co. v. Cwynar*, 388 Pa. 644, 131 A.2d 133 (1957) (*citing, Jones v. Schaefer*, 357 Pa. 628, 55 A.2d 387 (1947)). Contracts made with an incompetent before his adjudication as weakminded are voidable and can be avoided only on proper showing that he was incompetent at the time. *Hagopian*, 396 Pa. at 404, 153 A.2d at 899. When mental competency is at issue the real question is the condition of the person at the very time he made the gift or executed the instrument. *Sobel v. Sobel*, 435 Pa. 80, 254 A.2d 649 (1969); *Girsh Trust*, 410 Pa. 455, 189 A.2d 852 (1963). Competence is best determined by a person's words and acts. The testimony of persons who observed the alleged incompetent on the date in question is generally superior to testimony as to observations made prior to and subsequent to that date. Ordinarily, compe-

tence is presumed and the burden of proof is upon the person who alleges the incompetence. *Girsh.*

In a bench trial it is the duty of the trial judge to judge credibility of the witnesses and to weigh their testimony. *Allegheny County v. Monzo,* 509 Pa. 26, 500 A.2d 1096 (1985). His findings will not be reversed unless it appears that he has clearly abused his discretion or committed an error of law. *Frowen v. Blank,* 493 Pa. 137, 425 A.2d 412 (1981); for it is not the duty of an appellate court to find the facts but to determine whether there was evidence in the record to justify the trial court's finding of fact. *Monzo.*

The trial court in its decree *nisi* found the testimony of Dr. Freeman consistent with the facts as established by the testimony. It also found attorney Liebman a "neutral professional" and gave his testimony great weight. As noted by the Superior Court on review: "It appears that the trial judge as the trier of fact believed Liebman's testimony and found it not in conflict with Dr. Freeman's concession that Mr. Weir had lucid moments. On that basis the judge concluded that Weir was competent at the time of the transfers." *Weir, By Gasper v. Ciao,* 364 Pa.Super 490, 497, 528 A.2d 616, 619 (1987). We agree.

The ultimate issue was not whether Weir was suffering from Alzheimer's disease at the time of the conveyances as testified to by the expert. Neither was it whether Weir had previously engaged in bizarre behavior, as testified by other lay witnesses. One may accept those as facts and still conclude, as the trial court did, that Weir was competent at the time of the conveyances, based on the evidence that although the disease caused him to be confused at times, it left him lucid at others. There is no necessary conflict in the positions.

The expert's opinion that Weir was incompetent at the crucial time was his opinion on the ultimate issue, but it was not his function to determine. That was the duty of the court. *Monzo, supra.* In assigning great weight to Liebman's testimony the court acted consistent with our law in

that Liebman had observed Weir at the crucial time whereas the expert had not. *Girsh; Sobel, supra.* Neither was the court incorrect in accepting the observations of lay witnesses on the issue of competence. *Girsh.* Therefore, we find no abuse of discretion in the court's finding of fact nor error in its conclusion of law that at the time of the transfers, Mr. Weir was not incompetent. *Frowen, supra.* Appellant failed of her burden to produce evidence that would have established her father's incompetence at the crucial time. *Cwynar; Girsh, supra.*

■■■■■ The second issue appellant advances is whether the trial court abused its discretion or committed an error of law in holding that there was no confidential relationship between Mr. Weir and Mr. Ciao.

We note preliminarily that both the trial court and the Superior Court on review found this issue waived as not preserved in post-trial motions. *See Weir.* From our reading we note that the question was argued in appellant's brief in support of those motions. However, except for broad general averments of factual and legal error followed by citations to the numbers of the findings of fact or conclusions of law questioned, the grounds relied upon in challenging them was left unstated in the post-trial motions themselves. Thus the trial court labeled them "boilerplate". Since the ground relied on was not "specified in the motion", it was waived. *See* Pa.R.Civ.P.R. 227.1(b)(1), (2). However, even if we found the issue to have been properly preserved it is nevertheless meritless.

This court has determined that a confidential relationship exists when the circumstances make it certain that the parties do not deal on equal terms; where, on the one side there is an overmastering influence, or on the other, weakness, dependence or trust, justifiably reposed. In both situations an unfair advantage is possible. *Leedom v. Palmer,* 274 Pa. 22, 25, 117 A. 410, 411 (1922). Such a relation is created between two persons when it is estab-

lished that one occupies a superior position over the other; intellectually, physically, governmentally, or morally, with the opportunity to use the superiority to the other's disadvantage. *Cwynar,* 388 Pa. at 653, 131 A.2d at 137. A confidential relationship is not limited to any particular association of parties, but exists wherever one occupies such a position of advisor or counsellor as reasonable to inspire confidence that he will act in good faith for the other's interest. *Drob v. Jaffe,* 351 Pa. 297, 300, 41 A.2d 407, 408 (1945). Where a confidential relationship exists, the law presumes the transaction voidable unless the party seeking to sustain the validity of the transaction affirmatively demonstrates that it was fair under all of the circumstances and beyond reach of suspicion. *Leedom; Ruggieri v. West Forum Corp.,* 444 Pa. 175, 282 A.2d 304 (1971); *Young v. Kaye,* 443 Pa. 335, 279 A.2d 759 (1971). However:

> where undue influence and incompetency do not appear, and the relation between the parties is not one ordinarily known as confidential in law, the evidence to sustain a confidential relation must be certain; it cannot arise from suspicion or from infrequent or unrelated acts; care must be used not to confound acts springing from natural love and affection with confidential relations, and, while the line of demarcation may in some cases be narrow, nevertheless, to sustain the integrity of gifts based on such affection in family relations, it is necessary the distinction should exist.

*Leedom,* 274 Pa. at 26, 117 A. at 413.

Appellant brings us no convincing evidence of undue influence. First it was not established that Mr. Weir was incompetent at the time of the transfers. Furthermore, there is nothing in the record to suggest that Mr. Ciao presumed to act as his advisor or counsellor, or assumed a position in the relationship superior to Weir. On the contrary, the trial court found that the two met at Weir's call after Ciao had vacated the home where he lived with Weir for thirteen years. Mr. Weir and Ciao developed what the

court termed a close personal relationship. Mr. Weir did not consult Mr. Ciao for advice on his personal affairs but instead asked that he take him to a lawyer in order to arrange them. Mr. Weir consulted with the attorney out of Mr. Ciao's presence. None of these facts are inconsistent with the father-son relationship which the trial court found to have existed between them. In addition, the motivation of Mr. Weir, which impelled him to transfer the properties as he did, may be found in his wish that Ciao have a home of his own, and that he be able to use and enjoy the vacation home which was falling into disrepair and which Mr. Weir no longer used or kept up. Furthermore, another reason may be found in Mr. Weir's expressed belief that Mr. Ciao was treated unfairly when he was prevailed upon to transfer his interest in the Wildwood property immediately following his wife's death, as the trial court found. Therefore, appellant failed to establish that the relationship was such as would raise the presumption that the gifts were voidable, or to impose on Mr. Ciao the obligation to prove that they were fair under all of the circumstances. *Leedom, supra.* No confidential relationship was established.

Appellant last contends that the trial court abused its discretion and erred as a matter of law by "refusing" to rule on her request for a new trial on the basis of newly-discovered evidence. The Superior Court agreed that the trial court did abuse its discretion by its failure to address the issue but found the underlying claim meritless as a matter of law. *Weir, supra.* We agree with the Superior Court's latter conclusion, although we disagree with the former.

Here the record discloses that appellant, on the discovery of the evidence, consisting of the written statement and the affidavit, submitted them to the court together with a supplementary brief. Appellant's attorney also argued the point at a hearing on post trial motions. The Superior

Court stated that an application for a new trial to consider after-acquired evidence is "not governed by the strict technical rules applicable to other post-trial motions, but is addressed to the sound discretion of the court." The trial-court's omission to address the issue in its final order was then termed by that appellate court an abuse of discretion. *Weir,* 364 Pa.Super. at 495, 528 A.2d at 616. We disagree since there was never an "application" for a new trial entered.

Our Rules of Appellate Procedure require that after argument has been concluded, "... no brief, memorandum or letter relating to it may be submitted ... except upon application or when expressly allowed at bar at the time of argument." Pa.R.A.P.R. 2501(a). Appellant never sought leave of the court to submit the evidence. Since there was no application for leave of the court to present the evidence as a basis for a new trial, that issue can not be said to have been properly presented. An issue not properly presented is not one which engages the obligation of the court to address it. Discretion not properly called on is not abused when not exercised. Since there was no application, the omission to address the question was not a "refusal" and the trial court did not abuse its discretion.

Regardless of the procedural question, the Superior Court correctly held that the underlying claim was meritless. That court found as a matter of law that the evidence did not meet the standard which would qualify it as grounds for a new trial.

Though the evidence could not have been discovered at trial by reasonable diligence, was not cumulative or such that it could only be used to impeach, it was not likely to compel a different result. *Com Ex rel. Meyers v. Stern,* 509 Pa. 260, 501 A.2d 1380 (1985); *Hagopian, supra; Ebner v. Ewiak,* 335 Pa.Super. 372, 484 A.2d 180 (1984).

Appellant contends that the new evidence compels the conclusion that Mr. Weir was afraid that Aventino Ciao was

trying to take his property away. However, the meaning and significance of the statement itself in the context of its origin as set forth in the affidavit is ambiguous, cryptic and unclear. Whereas appellant would have us believe Weir feared the grasp of Ciao, the evidence was as consistent with an inference that Mr. Weir feared all the world, or Patricia Weir Gasper. Thus, as a matter of law, the ambiguous statement fails the third criterion of our three part test, in that it would not have been likely to change the outcome here. Therefore, appellant's last claim is meritless.

Because one may choose not to give what they have to their children does not compel the belief that they did other than what they wanted to do. So long as one is possessed of Reason, his reasons cannot be challenged. One may believe it should have been otherwise from the ordinary affections of natural love for one's children. Human experience however, teaches that there are exceptions; exceptions that all that love should give has already been given, that love must yield to Justice and fairness to others, that natural affection was torn by unrequited love, or satisfaction that a child has all that is required and more need not be given. Whatever the reasons, and they are myriad, they are not for us to say. So long as the evidence supports the presence of Reason and an intentional, knowing disposition we are not free to say to whom what should be given. It is the awesome task of the trial judge to measure competing credibilities and what he solidifies as facts we are not free to change.

The order of the Superior Court is affirmed.