642 A.2d 525

## In re ESTATE OF Edyth B. MEYERS.

## Appeal of Harvey A. MILLER, Jr., Executor of the Estate of Edyth B. Meyers.

Superior Court of Pennsylvania.

Argued March 16, 1994.

Filed June 6, 1994.

Alexander H. Lindsay, Jr., Butler, for appellant.

Bruno A. Muscatello, Butler, for appellee.

Before WIEAND, DEL SOLE and HUDOCK, JJ.

WIEAND, Judge:

The appeal in this case is from a decision by an orphans' court which refused an executor's petition to set aside an inter vivos creation of a joint interest in a bank account in favor of a neighbor who had occupied a confidential relationship with appellant's decedent. After careful review, we affirm.

The decedent, Edyth B. Meyers, died on May 7, 1991, at the age of 97. Letters testamentary were issued to Harvey A. Miller, Jr. He learned that the decedent, during her lifetime, had added the name of her neighbor, Hazel Kline, to a bank account maintained by the decedent at Citizens National Bank in Butler County. Therefore, the executor filed a petition

seeking to recover the asset for the estate. Mrs. Kline, who had held an irrevocable power of attorney from the decedent and who had performed numerous services for the decedent, made a claim for services. The respective claims were settled by agreement of the parties and approved by the court.

Later, the executor learned that an account maintained by the decedent at Mellon Bank and containing $66,832.82 had also been placed in the joint names of the decedent and Mrs. Kline in August, 1990.[1] A petition was filed by the executor to recover the funds in this account, and hearings thereon were held. The hearing court found that a confidential relationship had existed in fact between the decedent and Mrs. Kline but that there had been no undue influence. The executor argues on appeal that because a confidential relationship existed between the decedent transferor and Mrs. Kline, the burden shifted to the transferee to show a voluntary gift without undue influence. This burden, it is argued, was not met by the transferee.

The decedent, Edyth Meyers, remained of sound mind until her death. On June 10, 1989, however, she fell and fractured a hip. Thereafter, her ability to move around was severely limited. On July 11, 1989, she executed a power of attorney in favor of her friend and neighbor, Mrs. Kline; and thereafter Mrs. Kline took care of most, if not all, of the decedent's financial affairs. Mrs. Kline and her husband were also frequent visitors when the decedent was confined to a nursing home, and on occasion took the decedent home for dinner and for rides in their automobile. That the Klines were good neighbors and solicitous of the well being of their friend and neighbor is eminently clear.

For this reason and also because Mrs. Kline had held the decedent's power of attorney, the hearing court determined that a confidential relationship had existed. In *Weir by Gasper v. Estate of Ciao*, 521 Pa. 491, 556 A.2d 819 (1989), the Supreme Court said:

1. The funds in this account had been inherited by the decedent from her brother.

[A] confidential relationship exists when the circumstances make it certain that the parties do not deal on equal terms; where, on the one side there is an overmastering influence, or on the other, weakness, dependence or trust, justifiably reposed. In both situations an unfair advantage is possible. *Leedom v. Palmer,* 274 Pa. 22, 25, 117 A. 410, 411 (1922). Such a relation is created between two persons when it is established that one occupies a superior position over the other; intellectually, physically, governmentally, or morally, with the opportunity to use the superiority to the other's disadvantage. [*Union Trust Co. v. Cwynar,* 388 Pa. 644, 653, 131 A.2d 133, 137 (1957) ]. A confidential relationship is not limited to any particular association of parties, but exists wherever one occupies such a position of advisor or counsellor as reasonable to inspire confidence that he will act in good faith for the other's interest. *Drob v. Jaffe,* 351 Pa. 297, 300, 41 A.2d 407, 408 (1945).

*Id.* 521 Pa. at 504–505, 556 A.2d at 825. A confidential relationship may be shown by proof that the alleged donee possessed a power of attorney over a decedent's assets. *Foster v. Schmitt,* 429 Pa. 102, 108, 239 A.2d 471, 474 (1968); *Hera v. McCormick,* 425 Pa.Super. 432, 449, 625 A.2d 682, 691 (1993).

 Prior to the enactment of Chapter 63 of the Probate, Estates and Fiduciaries Code, 20 Pa.C.S. §§ 6301–6306 (added by the Act of July 9, 1976, P.L. 547, No. 134, effective September 1, 1976), the determination of property rights among parties to multiple-party accounts was governed by common-law principles. Under these principles, "the creation of a joint interest with rights of survivorship in a bank deposit, evidenced by the signatures of all the parties, [was] prima facie evidence of the intent of the party funding [the] deposit to make an inter vivos gift to the other joint tenants." *In re Estate of Young,* 480 Pa. 580, 584, 391 A.2d 1037, 1039 (1978). See also: *In re Estate of Gladowski,* 483 Pa. 258, 262, 396 A.2d 631, 633 (1979). When a donee was able to establish by prima facie evidence the making of a gift, a rebuttable presumption arose that the gift was valid. The burden then shifted to the contestant to rebut the presumption by clear and convincing

evidence. *In re Estate of Clark,* 467 Pa. 628, 634, 359 A.2d 777, 781 (1976). However, if it was shown that a confidential relationship existed between the donor and donee at the time the gift was made, the burden then shifted to the donee to establish that the gift was free of undue influence or deception. *Id.* See also: *Estate of Keiper v. Moll,* 308 Pa.Super. 82, 454 A.2d 31 (1982). The donee was required in such circumstances to show that the gift was a free, voluntary and intelligent act of the donor. *Estate of Keiper v. Moll, supra* at 87, 454 A.2d at 34.

Today, the ownership of funds held in a joint account is governed by statute. See: 20 Pa.C.S. §§ 6301–6306, *supra.* The enactment of Chapter 63 of the Probate, Estate and Fiduciaries Code wrought far-reaching changes in the law regarding joint bank deposits. See: *In re Estate of Young, supra* at 584 n. 3, 391 A.2d at 1039 n. 3. See also: *Pagnotti v. Old Forge Bank,* 429 Pa.Super. 39, 44 n. 2, 631 A.2d 1045, 1047 n. 2 (1993); *Dickey v. Kundrat,* 4 Fiduc.Rep.2d 367, 368 (1984). Pursuant to this statute, a "joint account" is defined as "an account payable on request to one or more of two or more parties whether or not mention is made of any right of survivorship." 20 Pa.C.S. § 6301. Relevant to the present dispute is § 6304(a), which governs the ownership of funds upon the death of a party to a joint account. Section 6304(a) provides as follows:

Any sum remaining on deposit at the death of a party to a joint account belongs to the surviving party or parties as against the estate of the decedent unless there is clear and convincing evidence of a different intent at the time the account is created.

The Official Comment to 20 Pa.C.S. § 6304 states, in pertinent part, as follows:

The effect of (a) of this section, when read with the definition of "joint account" in Section 6301(4), is to make an account, payable to one or more of two or more parties, a survivorship arrangement unless "clear and convincing evidence of a different contention" is offered.

The underlying assumption is that most persons who use joint accounts want the survivor or survivors to have all balances remaining at death.

■■■ As to the ownership of funds held in a joint account, the statute favors the surviving party over the estate of the decedent. By 20 Pa.C.S. § 6304, the legislature has created a statutory presumption that survivorship rights are intended when a joint account is created. This presumption can be overcome only by clear and convincing evidence of a contrary intent. Accord: *Pagnotti v. Old Forge Bank, supra* at 42–44, 631 A.2d at 1047. The burden of establishing a contrary intent is on the party who opposes the presumption of survivorship. See: *Miller Estate,* 7 Fiduc.Rep.2d 267, 270 (1987); *King Estate,* 3 Fiduc.Rep.2d 229, 231 (1983).

■ The provisions of 20 Pa.C.S. § 6304 have not heretofore been considered by an appellate court in a factual context similar to that in the instant case. The language of the statute, however, is clear. A joint account is payable to the survivor unless "clear and convincing evidence of a different intent" is produced. It follows, as several trial courts have held, that the existence of a confidential relationship between the owners of a joint account does not alone shift the burden of proof. See: *Miller Estate, supra; King Estate, supra.* The presumption is, rather, "that most persons who use joint accounts want the survivor or survivors to have all balances remaining at death."

This does not mean that the existence of a confidential relationship is meaningless or irrelevant. As the court observed in *Smelzer Estate,* 4 Fiduc.Rep.2d 9 (1983)

> "Although confidential relationship no longer shifts burdens, it is, nevertheless, necessary to consider the facts which constitute the relationship together with all other evidence in determining the intent of the decedent when the accounts ... were issued."

Inquiry must therefore be directed to ascertain whether a confidential relationship existed between [the parties to the joint account]. Because an intent different from the stric-

ture of Section 6304 had to exist at the time the account [was] created, the focal point of the inquiry must be [the date when the account was opened].

*Id.* at 12, quoting *King Estate, supra* at 233. Accord: *Nicolai Estate,* 9 Fiduc.Rep.2d 204 (1989); *Miller Estate, supra.* Evidence of a confidential relationship, therefore, is relevant only for purposes of determining intent; it does not serve to shift the burden of proof to the survivor.

A review of the record in the instant case discloses that appellant failed to present clear and convincing evidence that Edyth Meyers, the decedent, had not intended Hazel Kline to receive the balance of the account upon her death. Although evidence was introduced which established that a confidential relationship had existed between Meyers and Kline, there was no evidence that undue influence had been exerted upon Kline at the time the joint account was created. There also was no evidence that the decedent had not voluntarily created the joint account. Indeed, the only evidence regarding the circumstances surrounding the creation of the account was the signed account signature card which recited that the account was to be held by the parties as joint tenants with the right of survivorship. Absent evidence which establishes that the decedent had a "contrary intent" at the time the account was created, the statutory presumption of survivorship is controlling. Here, the presumption was not rebutted merely by the relationship existing between the decedent and her neighbor. Therefore, the balance of the account upon the death of Edyth Meyers became payable to Hazel Kline and not to the decedent's estate.

The order of the trial court is affirmed.