**Tyler v. Kindred Healthcare Operating, Inc.**

*Christopher J. Culleton*, for plaintiff.

*William J. Mundy, Sean P. O'Mahoney* and *John M. Skrocki*, for defendant Kindred Healthcare Operating, Inc.

*Jacquelyn J. Ager, Nicholas M. Centrella* and *Frank R. Emmrich, Jr.*, for defendant St. Francis Country House.

MASSIAH-JACKSON, *J.*, November 20, 2013—

## I. FACTUAL BACKGROUND and PROCEDURAL HISTORY

Ruth McNear was born on February 8, 1928. In 2012, Mrs. McNear fractured her right distal femur and was admitted to Mercy Fitzgerald Hospital in Philadelphia. Subsequently, Mrs. McNear was transferred to and was treated at Kindred Hospital South Philadelphia from August 31, 2012 to September 21, 2012 and at St. Francis Country House from October 4, 2012 until death on October 29, 2012. *See* plaintiff's complaint, paragraphs 51-60.

While Mrs. McNear was under the complete and total control of the two skilled nursing care facilities, she developed at least three necrotic, advanced pressure sores on her right lower extremity and sustained a second fracture to her right femur. Eighty-four year old Mrs. McNear presented to these nursing homes with a history of renal disease, dementia, hypertension, atrial fibrillation, glaucoma and right-eye blindness, according to the medical records. Mrs. McNear died as a result of complications due to the second femur fracture and surgery.

Avenia Tyler, a daughter of Ruth McNear and administratrix of the estate of Ruth McNear, initiated this civil ligation on the basis of the wrongful death act and survival statute. Both defendant-nursing homes have filed preliminary objections challenging, *inter alia*, jurisdiction of the courts, venue, and punitive damages. For the reasons set forth in this memorandum, all of the preliminary objections are overruled and the parties are directed to move forward to prepare for trial.

## II. LEGAL DISCUSSION — Kindred Hospital of South Philadelphia

Appellate cases hold that whether a claim is within the scope of an arbitration provision is a question of law. Because arbitration is a matter of contract, the court must review the construction and interpretation to determine whether there is an express agreement between the parties to arbitrate. The first inquiry, however, is to determine whether there exists a valid agreement to arbitrate. *See generally, Elwyn v. DeLuca*, 48 A.3d 457 (Pa. Superior Ct. 2012); *Midomo Co. v. Presbyterian Housing Development Co.*, 739 A.2d 180 (Pa. Superior Ct. 1999).

In this case, this court concludes that there is substantial

evidence the decedent, Ruth McNear, was confused and not competent at the time she signed the admission agreement and ADR agreement. There is no valid agreement to arbitrate in this situation.

In *Weir v. Estate of Ciao*, 556 A.2d 819 ((Pa. 1989), the Supreme Court noted the applicable analysis when there exists a challenge to the mental capacity of a person who signs a contract. 556 A.2d at 824:

> "Written instruments are not to be set aside except upon convincing testimony that their execution was tainted with fraud, either actual or constructive, or that the person so executing them did not have what the law considers sufficient mental capacity to do so. *Union Trust Co. v. Cwynar*, 388 Pa. 644, 131 A.2d 133 (1957) (citing, *Jones v. Schaefer*, 357 Pa. 628, 55 A.2d 387 (1947)). Contracts made with an incompetent before his adjudication as weakminded are voidable and can be avoided only on proper showing that he was incompetent at the time. *Hagopian*, 396 Pa. at 404, 153 A.2d at 899. When mental competency is at issue the real question is the condition of the person at the very time he made the gift or executed the instrument. *Sobel v. Sobel*, 435 Pa. 80, 254 A.2d 649 (1969); *Girsh Trust*, 410 Pa. 455, 189 A.2d 852 (1963). Competence is best determined by a person's words and acts. The testimony of persons who observed the alleged incompetent on the date in question is generally superior to testimony as to observations made prior to and subsequent to that date. Ordinarily, competence is presumed and the burden of proof is upon the person who alleges the incompetence. *Girsh*."

In the case at bar, documents and hospital chart notations

made by medical professionals on September 4, 2012, the same date the ADR agreement was signed, compel the conclusion that Mrs. NcNear's thoughts were disoriented and cloudy at the very time she executed the document.

August 31, 2012 — Mrs. McNear, age 84. Summary from Mercy Fitzgerald Hospital diagnosis includes dementia, glaucoma, right eye blindness, end stage renal disease and multiple coronary ailments.

August 31, 2012 — Admitted to Kindred Hospital South Philadelphia.

September 4, 2012 — Mrs. McNear signed the Admission Agreement and ADR Agreement (exact time not indicated).

September 4, 2012 — Throughout the day:

Nurse wrote: — Hemodialysis Flow Sheet Pre-Treatment: Patient: "Mild Confusion"

Nurse wrote: — Post-Treatment (6:16 p.m.): Patient's Level of Consciousness: "Confused"

Nurse wrote: — Neurological Assessment "Confused at times" Fall/risk Assessment

Nurse wrote: — "Confusion/Disorientation/Sedation" Sensory Status

Nurse wrote: — "Impaired vision or hearing"

It is apparent that throughout the day on September 4, 2012, several different nurses observed and recorded that Mrs. McNear was confused and impaired. Kindred Hospital recently submitted a sur-reply memorandum with an undated affidavit which purports to raise discrepancies about whether or not decedent-McNear

had sufficient mental capacity and/or lucid intervals to execute the business documents. This new document from the defendant and counsel challenges Kindred Hospital's own internal, contemporaneously prepared medical records. *See, In re Meyers*, 189 A.2d 852, 858-860 (Pa. 1963). Certainly, it can not be disputed that in order for an enforceable ADR agreement to exist, there must have been a meeting of the minds. *Mountain Properties v. Tyler Hill Realty Corporation*, 767 A.2d 1096 (Pa. Superior Ct. 2001) and cases cited at 1101. Accordingly, based on the circumstances presented herein the survival action will not be severed from the wrongful death action and it is not subject to the arbitration agreement. *See also, Pisano v. Extendicare Homes, Inc.* ___ A.3d ___ (Pa. Superior Ct. 2013). The defendant's preliminary objections challenging the arbitration provision, per rule 1028(a)(6) are overruled.

III. LEGAL DISCUSSION — St. Francis Country Home

On October 4, 2012, Mrs. McNear, was transferred to St. Francis Country Home in Darby, Pa. Because of her prior medical history, she was designated a "high fall risk." On October 24, 2012, Mrs. McNear suffered a broken femur while in physical therapy at St. Francis. Ruth McNear died on October 29, 2012.

At the time of admission to St. Francis, Mrs. McNear's daughter, Lynette, signed the admission agreement and the responsible person agreement. The issue here is whether the ADR agreement, included in the admission papers, is enforceable. The answer is dependent upon whether Lynette McNear was acting as Ruth McNear's agent when she signed the materials. *Walton v. Johnson*, 66 A.3d 782 (Pa. Superior Ct. 2013).

The *Walton* Court provided a thorough review of

Pennsylvania agency law. The burden of proving an agency relationship falls on St. Francis, the party asserting the existence of the relationship. 66 A.3d at 786:

"An agency relationship may be created by any of the following: (1) express authority, (2) implied authority, (3) apparent authority, and/or (4) authority by estoppel. Express authority exists where the principal deliberately and specifically grants authority to the agent as to certain matters. *See Bolus v. United Penn Bank*, 363 Pa.Super. 247, 525 A.2d 1215 (1987). Implied authority exists in situations where the agent's actions are 'proper, usual and necessary' to carry out express agency. *See Passarelli v. Shields*, 191 Pa.Super. 194, 156 A.2d 343 (1959). Apparent agency exists where the principal, by word or conduct, causes people with whom the alleged agent deals to believe that the principal has granted the agent authority to act. *See Turner Hydraulics v. Susquehanna Construction Co.*, 414 Pa.Super. 130, 606 A.2d 532 (1992). Authority by estoppels occurs when the principal fails to take reasonable steps to disavow the third party of their belief that the purported agent was authorized to act on behalf of the principal. *See Turnway Corp. v. Soffer*, 461 Pa. 447, 336 A.2d 871 (1975)."

In the case at bar, there is no evidence or documents indicating Ruth McNear gave her daughter power of attorney or authorization to make legal decisions on her behalf. While it appears that Ruth McNear's capacity and mental state in October, 2012 was less than in August, 2012 (when she was admitted to Kindred Hospital), the record is void of facts relating to the mother's admission, or, the circumstances of Lynette's signature on the documents, or, whether Ruth consented to or affirmed

Lynette's actions at a later time. The mere existence of a family relationship does not create an agency relationship "unattended by conditions, acts or conduct clearly implying agency." *Sidle v. Kaufman*, 29 A.2d 77, 81 (Pa. 1942). The questions of apparent authority are questions of fact for a jury. *Passarelli v. Shields*, 156 A.2d 343 (Pa. Superior Ct. 1959).

Finally, to the extent St. Francis asserts that it was defrauded by Lynnette McNear, this court notes that rule 1030 states that all affirmative defenses, including fraud, "shall be" pled in new matter in the response to plaintiff's complaint.

This court concludes that St. Francis has been unable to establish that Lynette McNear was acting as Ruth McNear's agent when the ADR document was signed and thus, no valid arbitration agreement exists. The survival action will not be severed from the wrongful death action and it is not subject to the arbitration agreement. *See also, Pisano v. Extendicare Homes, Inc.*, ___ A.3d __ (Pa. Superior Ct. 2013).

The defendant's preliminary objections challenging punitive damages and specificity, *inter alia*, Rule 1019(a), 1028(a)(2), 1028(a)(3) are overruled. The defendant's preliminary objections challenging venue, *inter alia*, Rule 1028(a)(1), Rule 1006(a.1) are overruled as per Rule 1006(c)(1).

## IV. CONCLUSION

After considering the arguments of all parties, this court concludes that all preliminary objections are overruled and all defendants must answer plaintiff's complaint within twenty days.

## ORDER

And now, this 20th day of November, 2013, after consideration of the preliminary objections filed by defendant Kindred Healthcare Operating, Inc. d/b/a Kindred Hospital South Philadelphia, and plaintiff's response thereto, and for the reasons set forth in the memorandum filed this date, it is hereby ordered that all of the preliminary objections are overruled.

Defendant shall file an answer to the complaint within twenty (20) days from the date this order is docketed.