In re Annette FALLUCCO a/k/a, Antonetta Fallucco, an Incapacitated Person, Appellee.

Appeal of: Brian E. Rose, Kenneth J. Rose, Pamela Rose, Cynthia Rose and Cynthia Rose as Parent and Natural Guardian of Savannah Marie Woy, a Minor, Appellants.

Janet Carothers, Heir, James Fallucco, Executor, Appellees.

In re Annette Fallucco, an Incapacitated Person, Now Deceased, Appellee.

Appeal of: Thomas J. Dempsey, Jr., Guardian.

Superior Court of Pennsylvania.

Argued Sept. 24, 2001.

Filed Jan. 4, 2002.

Reargument Denied March 15, 2002.

Frank W. Jones, Pittsburgh, for appellants at 2037.

Mark T. Vuono, for James Fallucco, appellee.

Thomas J. Dempsey, Pittsburgh, for Annette Fallucco, appellee and for appellant at 2105.

BEFORE: DEL SOLE, President Judge, MUSMANNO and BROSKY, JJ.

MUSMANNO, J.:

¶ 1 Appellants Brian E. Rose, Kenneth J. Rose, Pamela Rose, Cynthia Rose, and Cynthia Rose as parent and natural guardian of Savannah Marie Woy, a minor, (collectively "residuary Legatees") and Thomas J. Dempsey, Jr., Esquire ("Dempsey") (collectively "the appellants") appeal from the Order, which decreed that James Fallucco ("James"), the Decedent's son, was entitled to the funds that were held in joint accounts with Annette Fallucco ("Decedent"), and directed the executor of the Estate of the Decedent ("the Estate") to release these funds, plus interest, to James. We affirm.

¶ 2 The pertinent facts, as stipulated by the parties, and the procedural history of this case are as follows. The Decedent executed her last will and testament on May 21, 1997, which provided specific bequests of $20,000 to her son, James, and $400 to her daughter, Janet Carothers. The will further provided for Decedent's residuary estate to be distributed in equal shares to her four grandchildren and one great grandchild, the residuary Legatees.

¶ 3 On April 2, 1997 and May 16, 1997, two certificates of deposit in the total amount of $139,314.21 were titled in the name of Decedent and James as joint tenants with the right of survivorship. All funds held in these CDs were contributed solely by Decedent. On December 19, 1998, James caused the entire proceeds of these CDs to be invested in three individual accounts titled in his name only. James never withdrew any principal or interest from the joint CDs or the individual accounts.

¶ 4 On March 16, 1999, Decedent's children filed a Petition to have Decedent adjudicated an incapacitated person, and to have a guardian appointed. On March 25, 1999, the Orphans' Court declared Decedent incapacitated, following a hearing held on March 23, 1999. On the same date, the Orphans' Court appointed Dempsey as the emergency guardian of the Estate. At a later hearing, the Orphans' Court designated Dempsey as the permanent guardian of the Estate. Dempsey continued to serve as guardian of the Estate until June 23, 1999, the date of Decedent's death.

¶ 5 Prior to June 23, 1999, Dempsey caused funds previously held in joint accounts with James to be titled in the name of the guardian alone, for the benefit of Decedent, and did not include James as a joint tenant with the right of survivorship.

¶ 6 Decedent died testate on June 23, 1999. On August 19, 1999, the guardian of the Estate filed an Inventory and First and Final Account of the Estate, which included funds that were previously held in joint accounts with James. James filed objections to the inclusion of these assets. On August 25, 2000, the Orphans' Court entered an Order and opinion, finding that

James was entitled to the funds that were held in joint accounts with Decedent, and directing the executor of the Estate to release these funds, plus interest, to James.

¶ 7 Both the residuary Legatees and Dempsey filed timely Exceptions to the August 25, 2000 Order. In their Exceptions, they alleged that the Orphans' Court erred in considering evidence of Decedent's testamentary intent. On November 9, 2000, the Orphans' Court entered an Order dismissing the Exceptions and affirming the August 25, 2000 Order.

¶ 8 Thereafter, the appellants filed the instant timely appeals, in which they raise two issues:

(1) when the guardian of an incapacitated person closes an account that the incapacitated person held jointly with a non-contributing person, prior to the incapacitated person's death, is the survivorship expectancy of the non-contributing former joint owner destroyed; and

(2) whether the guardian of an incapacitated person has the authority to place funds held jointly by the incapacitated person and another, into an account titled in the guardian's name alone, for the benefit of the incapacitated person, without court approval.

*See* Briefs of Appellants at 4.

¶ 9 Our standard of review in addressing an appeal from a decree in equity is well established.

We are bound by the chancellor's findings of fact unless there has been an abuse of discretion, a capricious disregard of evidence, [or] a lack of evidentiary support on the record.... Our review is therefore limited to a determination of whether there was an error of law and whether the chancellor's factual findings are supported by sufficient evidence.

Furthermore, we are not bound by the chancellor's conclusions of law; rather, where the rules of law on which the chancellor relied are palpably wrong or clearly inapplicable, we will reverse the chancellor's decree.

*In re Estate of Cambest,* 756 A.2d 45, 49–50 (Pa.Super.2000) (citations omitted).

¶ 10 Presently, the appellants are not challenging findings of fact, but rather only conclusions of law. In particular, the appellants object to the Orphans' Court's application of the Multiple–Party Accounts Act ("MPAA"), 20 Pa.C.S.A. §§ 6301–6306, to the instant case. Because the property at issue was in the form of CDs in joint names, the MPAA governs this matter. *See* 20 Pa.C.S.A. §§ 6301–6306. For the purposes of the statute, "account" includes a certificate of deposit. 20 Pa.C.S.A. § 6301. Section 6303(a) addresses the ownership of an account while the joint tenants are alive. It provides that "[a] joint account belongs, during the lifetime of all parties, to the parties in proportion to the net contributions by each to the sum on deposit, unless there is clear and convincing evidence of a different intent." Section 6304(a) addresses the ownership of an account after a joint tenant dies. The pertinent part of section 6304(a) reads as follows:

§ 6304. Right of survivorship

(a) Joint account—Any sum remaining on deposit at the death of a party to a joint account belongs to the surviving party or parties as against the estate of the decedent, unless there is clear and convincing evidence of a different intent at the time the account is created.

¶ 11 The record establishes that all of the funds that were deposited in the two CDs had belonged to the Decedent and that James never deposited any of his own money in those accounts. Therefore, un-

der the MPAA, the presumption is that, during her lifetime, the Decedent owned all of the funds on deposit. The MPAA makes this presumption rebuttable, but it can only be overcome by clear and convincing evidence of a different intent.

■ ¶ 12 Here, the Decedent titled two CDs in the name of James and herself as joint tenants on April 2, 1997 and May 16, 1997. On May 21, 1997, five days later, she executed her will. These facts, which were stipulated to by the parties, give rise to the inference that the Decedent intended to make a testamentary disposition of all of her assets through her duly executed will and the jointly held accounts.

¶ 13 Furthermore, the Decedent's attorney, Samuel A. Moore, Esquire ("Attorney Moore"), testified that, in the preparation of her will, he had discussed with the Decedent the disposition of her assets. Trial Court Opinion, 8/23/00, at 3. Based on these discussions, Attorney Moore opined that the Decedent understood that the joint accounts would not pass under her will. In addition to preparing her will and titling the jointly held CDs, the Decedent purchased annuities, which named her daughter as the beneficiary of approximately $60,000.00. Based on Attorney Moore's testimony and the related stipulated facts, the Orphans' Court found that the Decedent's estate plan consisted of the joint accounts in addition to the residuary Estate disposed of through her will. Based on our review of the record, we agree with the Orphans' Court's finding and conclude that the Decedent intended to make a testamentary disposition of those assets, which she held in CDs with James, to James. Therefore, these jointly held assets do not pass through her will as part of the residuary Estate.

¶ 14 Regarding the second issue on appeal, Dempsey had no authority to transfer the funds that the Decedent titled in joint accounts in the names of James and herself, to an account titled in Dempsey's name alone for the benefit of the Decedent. In accordance with Pennsylvania law, the guardian of the estate does not have the authority to change the estate plan of the incapacitated person, except upon petition to the court. Specifically, 20 Pa.C.S.A. § 5536 provides, in pertinent part, as follows:

> (b) Estate Plan—The court, upon petition and with notice to all parties in interest and for good cause shown, shall have the power to substitute its judgment for that of the incapacitated person with respect to the estate and affairs of the incapacitated person for the benefit of the incapacitated person, his family, members of his household, his friends and charities in which he was interested. This power shall include, but is not limited to the power to . . .
>
> (2) Convey, release or disclaim his contingent and expectant interest in property, including marital property rights and any right of survivorship incident to joint tenancy or tenancy by the entirety. . . .
>
> The court in exercising its judgment shall consider the testamentary and intervivos intentions of the incapacitated person insofar as they can be ascertained.

20 Pa.C.S.A. § 5536(b)(2). Section 6303(a) of the MPAA provides that, during the lifetime of all parties, a joint account belongs to the parties in proportion to their net contributions. *See* 20 Pa.C.S.A. § 6303(a).

■ ¶ 15 Here, prior to the guardianship proceedings, James removed the Decedent's name from the joint accounts, which she had solely funded. After his appointment as guardian of the Estate, Dempsey requested that the funds be returned to the Estate. James complied

with this request. Upon the return of these funds to the Estate, Dempsey should have restored the *status quo* and re-titled the joint accounts in the names of the Decedent and James. Instead, Dempsey placed the funds in an account titled in his name alone for the benefit of the Decedent. We have already concluded that the Decedent intended to make a testamentary disposition of her jointly held accounts to James. Based on our review of the record, we agree with the trial court in its finding that "this action, whether intentional or inadvertent, fundamentally altered [the Decedent's] intended testamentary disposition." Trial Court Opinion, 8/23/00, at 3.

¶ 16 Furthermore, we note that Dempsey was required to file a petition with the Orphans' Court and give notice to all parties prior to the transfer of such funds. He failed to meet these requirements as set forth in 20 Pa.C.S.A. § 5536. Thus, Dempsey's act of transferring the joint account assets into an account titled in his name alone for the benefit of the Decedent did not sever the joint tenancy estate because he was without authority to transfer these assets. We conclude that Dempsey did not have the authority to restructure the Decedent's estate plan by placing the jointly held funds into an account titled in his name alone, for the benefit of the Decedent.

¶ 17 For the reasons set forth above, we affirm the August 25, 2000 Order, by which James is entitled to the funds previously held in the joint accounts with the Decedent, and which directed the executor of the Estate to release these funds, plus interest, to James.

¶ 18 Order affirmed.

¶ 19 DEL SOLE, President Judge, files a Concurring Statement.

Concurring statement by DEL SOLE, President Judge:

¶ 1 I join in the Majority's Opinion save for the holding that the guardian acted inappropriately in marshalling Annette Fallucco's assets prior to her death, which was to assure that sufficient monies were available to attend to her needs during her lifetime. This action by the guardian, acting in his fiduciary capacity, was proper to allow for Annette's care and maintenance.

¶ 2 The Orphans' Court was correct in concluding that Annette intended to make an *inter vivos* gift of the CD's held jointly with her son, James, as part of her testamentary devise. Thus, the Orphans' Court acted properly in ordering the guardian to return the assets transferred to his sole account for the benefit of the Decedent prior to her death. This directive by the Orphans' Court to release such funds to James effectuated the Decedent's testamentary intent without any evidence of malfeasance assignable to the guardian.