J-A30019-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ESTATE OF MARIE HIRNYK, DECEASED | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: ANGELLA PIOTROWSKI, EXECUTRIX OF THE ESTATE OF MARIA HIRNYK, DECEASED | : : : : : : | |
| | : | No. 84 WDA 2018 |

Appeal from the Order, January 10, 2018,
in the Court of Common Pleas of Allegheny County,
Orphans' Court at No(s):  No. 34 of 2013.

BEFORE:   SHOGAN, J., KUNSELMAN, J., and STRASSBURGER*, J.

MEMORANDUM BY KUNSELMAN, J.:                    **FILED APRIL 16, 2019**

Angella Piotrowski, Executrix of the Estate and daughter of Maria Hirnyk, Deceased, appeals from the orphans' court's order denying her request to return over $90,000 from a joint bank account held in the name of Maria Hirnyk and Marjorie Weiblinger to Hirnyk's estate and further refusing to surcharge Weiblinger for allegedly engaging in self-dealing with those funds. After a thorough review, we affirm.

This matter was previously before the Court on an appeal from an order admitting Hirnyk's 2009 will for probate.  We have restated below the facts from that case, which we supplemented with additional facts pertinent to the issues now before us:

> Hirnyk, a Ukrainian immigrant, was born on October 12, 1922.  Hirnyk spoke broken English and had a limited ability to read and write English.  Hirnyk also did not drive and required assistance with transportation, administering her medicine,

_____
* Retired Senior Judge assigned to the Superior Court.

organizing her bills, and corresponding in writing with her family. Hirnyk executed the 2009 Will, which named her daughter, Angella Piotrowski ("Piotrowski"), as the sole legatee.

In 2009, Weiblinger met Hirnyk at church. Weiblinger began to assist Hirnyk with her shopping needs approximately once or twice a week. In 2010, Weiblinger increased her assistance by helping Hirnyk with, *inter alia*, her banking, transportation to doctors' appointment, paying bills, and writing checks. Thereafter, Hirnyk gave Weiblinger power of attorney.

In August 2011, Hirnyk revoked the power of attorney after accusing Weiblinger of theft, and alleging that Hirnyk signed the power of attorney while hospitalized with diminished capacity. As a result, Nadia Peternel ("Peternel"), a longtime family friend, began to assist Hirnyk with her daily needs including banking, driving, and household chores. In September 2011, Hirnyk gave Peternel power of attorney to act as Hirnyk's agent. In early 2012, Hirnyk's doctor, Dr. Dushan Majkic ("Dr. Majkic") noted that Hirnyk exhibited symptoms of forgetfulness, confusion, paranoia, and depression Thereafter, Hirnyk, believing that Peternel was stealing from her, revoked Peternel's power of attorney [in May 2012].

Weiblinger resumed assisting Hirnyk with her needs. In March 2012, a joint bank account was opened [at Citizens Bank, being account number 0168], in Weiblinger and Hirnyk's names, with deposits totaling over $90,000. [An initial deposit of $47,777.71 was made. Another deposit in the amount of $48,526.79 was made on March 23, 2012. Both of these deposits came from Hirnyk's funds]. At Hirnyk's direction, Weiblinger contacted Attorney Carol Sikov Gross ("Attorney Gross"), a certified elder law attorney, to prepare legal documents for Hirnyk. On June 8, 2012, Hirnyk executed a will ("2012 Will") and a power of attorney naming Weiblinger as her agent. In the 2012 Will, Hirnyk excluded any bequest to Piotrowski, and indicated that Weiblinger would receive a substantial portion of Hirnyk's estate. [Shortly thereafter, Hirnyk's health began to decline. Beginning in July through the time of her death, Hirnyk was admitted to various medical and skilled nursing facilities. On August 18, 2012, Weiblinger transferred $60,720 from the joint account to a Citizens' Bank savings account ending 4104 in Weiblinger's name only.] Subsequently, [on September 20, 2012] Weiblinger removed Hirnyk from the joint bank account [by signing a new signature card with only Weiblinger's name on it. At that time,

there was $30,078 remaining in the account]. Hirnyk died on October 31, 2012.

[Shortly after Hirnyk's death, on November 16, 2012, Weiblinger returned $60,000 of the funds previously transferred from Citizens Bank account 0168 back to that account.]

On November 29, 2012, the 2009 Will was admitted to probate [at docket 7115 of 2012] and Piotrowski was granted letters testamentary. Weiblinger filed a Petition to Open Probate Record to Admit Later Will pursuant to 20 Pa.C.S.A. section 3138. . . .

***In re Estate of Maria Hirnyk***, 376 WDA 2015, unpublished memorandum at 1-3 (January 29, 2016).

After a hearing, the hearing officer issued an order finding that Hirnyk had testamentary capacity, but that the 2012 Will was the product of undue influence. The orphans' court agreed, dismissed Weiblinger's appeal, and directed the estate to proceed with the 2009 Will. Upon further appeal to this Court, we affirmed.

Thereafter, on November 2, 2016, Piotrowski filed a petition seeking the return of the funds Hirnyk deposited into Citizens Bank account 0168.[1] Specifically, Piotrowski claimed that Hirnyk did not intend to grant Weiblinger a right of survivorship in the funds upon her death, and that the joint account was the product of undue influence, fraud and/or a breach of Weiblinger's fiduciary duty to Hirnyk. Weiblinger filed an answer alleging that Hirnyk

---

[1] Allegheny County Orphans' Court No. 7115 of 2012.

- 3 -

created the account on her own volition, and consequently, the petition should be dismissed.

On January 12, 2017, Weiblinger filed a petition to release funds, seeking to unfreeze Citizens Bank account 0168, which had remained frozen since January 4, 2013, by order of court.[2] Weiblinger claimed that these funds were properly payable to her as the sole surviving owner of the joint account in accordance with the Multi-Party Account Act ("MPAA").

Additionally, Piotrowski had pending objections to the account previously filed by Weiblinger as power of attorney. In her objections, Piotrowski challenged a number of disbursements Weiblinger made from various accounts pursuant to the 2012 power of attorney, including Weiblinger's actions with respect to Citizens Bank account 0168. Among other things, Piotrowski claimed that Weiblinger engaged in self-dealing by transferring the funds in that account to herself, and should be surcharged.

By order dated March 31, 2017, the orphans' court consolidated all of these outstanding matters for trial.[3] On August 30 and 31, 2017, the orphans' court conducted a hearing.

By order December 18, 2017, the orphans' court denied Piotrowski's petition for the return of funds and granted Weiblinger's petition for the release of funds and unfroze the Citizens Bank account 0168, effective January

_____

[2] Allegheny County Orphans' Court No. 00034 of 2013.
[3] These matters were consolidated No. 00034 of 2013.

16, 2018. The orphans' court surcharged Weiblinger $5,000 for questionable expenditures from various bank accounts, including Citizens Bank account 0168, to be paid to the estate from the released funds. Piotrowski filed a motion for reconsideration, which the orphans' court denied.

On January 11, 2018, Piotrowski timely filed a notice of appeal. Both Piotrowski and the orphans' court complied with Pa.R.A.P. 1925.

On appeal, Hirnyk raises the following three issues:

I.    Whether the trial court erred by finding that the funds in Citizens Bank account ending 0168 belonged to Marjorie Weiblinger by operation of the right of survivorship provisions of the Pennsylvania Multi-Party Account Act, 20 Pa.C.S.A. § §6301, et seq.?

II.   Whether the trial court erred in failing to return to the Estate the funds contained in Citizens Bank account ending 0168 when these funds were transferred by Weiblinger to herself in acts of self-dealing and without authority under the power of attorney?

III.  Whether the trial court erred in failing to surcharge Weiblinger for self-dealing transactions undertaken by Weiblinger when she transferred to herself approximately $90,078.25 of Decedent's funds without authority under a power of attorney?

*See* Hirnyk's Brief at 5.

Our review of orphans' court matters is limited:

Our standard of review of the findings of an Orphans' Court is deferential. When reviewing a decree entered by the Orphans' Court, this Court must determine whether the record is free from legal error and the court's factual findings are supported by the evidence. Because the Orphans' Court sits as the fact-finder, it determines the credibility of the witnesses and, on review, we will not reverse its credibility determinations absent an abuse of that discretion. However, we are not constrained to give the same deference to any resulting legal conclusions. Where the rules of

law on which the [court] relied are palpably wrong or clearly inapplicable, we will reverse the [court's] decree.

*In re Ware*, 814 A.2d 725, 731 (Pa. Super. 2002) (internal citations and quotations omitted). With this in mind, we consider Piotrowski's issues.

In her first appellate issue, Piotrowski contends that the trial court erred in applying the MPAA in this case. According to Piotrowski, Weiblinger removed Hirnyk's name from Citizens Bank account 0168 prior to Hirnyk's death, thereby terminating the joint nature of the account. As a result, at the time of death, the form of the account, as determined under 20 Pa.C.S.A. section 6305, was not a joint account. Piotrowski's Brief at 19, 23. Thus, the right of survivorship provision in the MPAA did not apply to Citizens Bank account 0168 or the transfers at issue, and the funds held therein should be returned to the estate. Piotrowski's Brief at 19, 24. In response, Weiblinger contends that those funds are hers by virtue of the MPAA and the right of survivorship vested in Weiblinger.

In Pennsylvania, the ownership of funds held in a multi-party account is governed by the MPAA. This statute defines a joint account as "an account payable on request to one or more of two or more parties whether or not mention is made of any right of survivorship." 20 Pa.C.S.A. § 6301. ***During the lifetime of all parties***, "[a] joint account belongs . . . to the parties in proportion to the net contributions by each to the sum on deposit, unless there is clear and convincing evidence of a different intent." 20 Pa.C.S.A. § 6303(a) (emphasis added). Consequently, the depositor in a joint account is presumed

- 6 -

to retain ownership of the sums he or she has placed on deposit during his or her lifetime in proportion to the total fund.

"***Upon the death of a party to a joint account***, the amount in the account "belongs to the surviving party or parties as against the estate of the decedent, unless there is clear and convincing evidence of a different intention at the time the account is created." 20 Pa.C.S.A. § 6304(a) (emphasis added). This section establishes a statutory presumption that survivorship rights are intended when a joint account is created. ***In re Estate of Heske***, 647 A.2d 243, 244 (Pa. Super. 1994). This presumption can be overcome only by clear and convincing evidence of a contrary intent. 20 Pa.C.S.A. § 6304(a); ***In Re Falluco***, 791 A.2d 1177, 1180 (Pa. Super. 2002). This burden is on the one who opposes the presumption of survivorship. ***In Re Estate of Meyers***, 642 A.2d 525, 528 (Pa. Super. 1994). The form of the account at the death of a party determines whether a right of survivorship exists under the statute. 20 Pa.C.S.A. § 6305.

In this case, the orphans' court concluded that, based upon the testimony, "that [Hirnyk] intended to make [the account] a joint account." Trial Court Opinion, 12/18/17, at 4. The orphans' court further concluded that, while recognizing that Weiblinger and Hirnyk had a confidential relationship and that Hirnyk was heavily influenced by Weiblinger, the orphans' court did "not believe that Piotrowski presented clear and convincing evidence of a different intent at the time the account was created." ***Id.*** In reaching this conclusion, the orphan's court explained:

- 7 -

The issue is what was the intent of the parties, in particular, [] when the account was opened on March 19, 2012. Other than the bank employee who opened the account, who was not called as a witness, the only persons present when the account was opened were [Hirnyk] and Ms. Weiblinger. Ms. Weiblinger testified that on March 19, 2012, she drove [Hirnyk] to two banks. First, they went to PNC Bank in Carrick Shopping Center. [Hirnyk] went into the bank alone, while Ms. Weiblinger stayed in the car. Then, they went to the Citizens Bank inside the Giant Eagle grocery store in Brentwood. Ms. Weiblinger went into the store with [Hirnyk] and took her to the bank. As [Hirnyk] wanted Ms. Weiblinger to get some groceries for her, Ms. Weiblinger left the area of the bank and shopped for groceries. When she returned to the bank, the bank teller asked her to sign the signature card for the account. Ms. Weiblinger told [Hirnyk] that she did not want to sign it. But the Decedent said "yeah, yeah, you sign, you sign"; so Ms. Weiblinger signed the signature card.

*Id.* at 3-4. The record supports the orphans' courts findings; evidently the orphans' court found this testimony credible. Additionally, the account, on its face, stated that it was a joint account to be held by the parties as joint tenants with the right of survivorship; the signature card was signed by both Hirnyk and Weiblinger.

Moreover, and most significantly, Piotrowski did not present any evidence to indicate that Hirnyk's intent was anything other than to create a joint account with the right of survivorship in Weiblinger. Piotrowski herself admitted that she did not know anything about the account because, as she testified, she was not there. Piotrowski presented no other evidence regarding the opening of this account or of a contrary intent by Hirnyk. Thus, the orphans' court applied the MPAA to the funds in Citizens Bank account 0168,

refused to return them to the estate, and directed that they be released to Weiblinger. *See* Trial Court Opinion, 12/18/17, at 5.

However, now, on appeal, Piotrowski shifts her argument regarding the joint account from the time the account was opened to the time of Hirnyk's death. According to Piotrowski, when Weiblinger executed a new signature card for account 0168, which removed Hirnyk's name from the joint account and titled it solely in Weiblinger's own name, she terminated the joint tenancy of the account. Piotrowski's Brief at 22. As a result, Piotrowski argues when Hirnyk died the funds belonged to Hirnyk and should pass to the estate.

In support of this position, Piotrowski relies upon *Lanning v. West*, 803 A.2d 753 (Pa. Super. 2002). There, we stated that where the decedent "was still living while the joint accounts are opened and *closed* . . . 20 Pa.C.S. section 6303(a) [lifetime ownership] controls." *Id.* at 761. Further, because the decedent there "contributed 100% of the funds into the joint accounts, 100% of the joint account belonged to the decedent." *Id.* Applying this same rationale here, Piotrowski contends that the orphans' court erred in not returning the funds in Citizens Bank account 0168 to the estate. Piotrowski's Brief at 23. Because the joint account was terminated prior to Hirnyk's death, the MPAA survivorship provisions do not apply and cannot transfer ownership of the funds to Weiblinger upon Hirnyk's death. Piotrowski's Brief at 24.

Critically, we observe that, before the orphans' court, Piotrowski focused on the creation of the joint account and the propriety of Weiblinger's handling of Hirnyk's funds. Piotrowski offered no proposed findings of fact or

conclusions of law regarding the termination of Citizens Bank account 0168 or its nature at the time of Hirnyk's death. Although Piotrowski briefly addressed this in her motion for reconsideration, she did not specify this as an appellate issue in her Pa.R.A.P. 1925(b) statement.

Pennsylvania Rule of Appellate Procedure 1925 requires that a 1925(b) statement "concisely identify each ruling or error that the appellant intends to challenge with sufficient detail to identify all pertinent issues for the judge." Pa.R.A.P. 1925(b)(4)(vii). "Issues not included in the statement and/or not raised in accordance with the provisions of the [Rule] are waived." Pa.R.A.P. 1925(b)(4)(vii). The Rule 1925(b) statement must be specific enough for the trial court to identify and address the issue an appellant wishes to raise on appeal. **_Tong-Summerford v. Abington Memorial Hosp._**, 190 A.3d 631, 649 (Pa. Super. 2018) (internal quotations and citations omitted).

In **_Tong-Summerford_**, the appellants raised a general issue regarding statements made by opposing counsel in their 1925(b) statement. In their appellate brief however, the appellants specifically argued about certain statements counsel made during closing argument. Because the appellants failed to specifically challenge counsel's statement from the closing argument in their 1925(b) statement, this Court found that the appellants waived that claim.

Similarly, here, Piotrowski only generally stated in her 1925(b) statement that the orphan's court erred in applying the right of survivorship provision under the MPAA. Piotrowski did not specify that the error was

- 10 -

premised upon her contention that the account was not a joint account subject to the MPAA at the timeof Hirnyk's death. Consequently, the orphan's court did not have the opportunity to address this issue in its 1925(a) opinion. Our rules mandate that "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302. Because Piotrowski did not raise this specific issue with the orphans' court, she waived it.

In her second appellate issue, Piotrowski contends that the orphans' court erred in concluding that Weiblinger's transfer of funds out of Citizens Bank account 0168 and into her name only did not constitute self-dealing. Piotrowski's Brief at 33. Additionally, Piotrowski contends that the POA did not grant Weiblinger the authority to make gifts or transfer funds. Piotrowski's Brief at 25. In response, Weiblinger argues that the evidence of record supports the trial court's conclusion that Weiblinger did not engage in self-dealing. Moreover, any issue regarding gifting pursuant to the power of attorney is waived.

In this issue, Piotrowski first contends that Weiblinger's transaction with respect to the funds in Citizens Bank account 0168 constituted an act of self-dealing. In her objections to Weiblinger's accounting, Piotrowski asserts that by withdrawing $60,720.72 from Citizens Bank account 0168 and depositing it into a separate bank account in Weiblinger's name only, Weiblinger engaged in self-dealing. She further asserts that by executing a Citizens Bank Updated Personal Signature Card and removing Hirnyk's name from account 0168,

which had $33,027.25 remaining in it at that time, Weiblinger effectively disbursed those funds to herself. This, according to Piotrowski, also constituted self-dealing. Piotrowski's Brief at 33.

The test of forbidden self-dealing is whether the fiduciary had a personal interest in the subject transaction of such a substantial nature that it might have affected his judgment in a material connection. **In re Noonan**, 63 A.2d 80, 84 (Pa. 1949) (quotations and citations omitted). With respect to Weiblinger's alleged self-dealing, the orphan's court stated:

> The second and third issues claim that the Court erred in failing to return to the Estate the funds contained in Citizen' Bank Account No. x0168 or to surcharge Ms. Weiblinger "when these funds were transferred by [Ms.] Weiblinger to herself in acts of self-dealing and without authority under the Power of Attorney." While the court found that Ms. Weiblinger breached her fiduciary duties in some respects, the Court was not convinced that she was guilty of "self-dealing".

Trial Court Opinion, 2/26/18, at 4-5. We review this conclusion with the same standard in mind.

The evidence of record substantiates the trial court's conclusion that Weiblinger did not engage in self-dealing. Several of the witnesses testified that throughout her life, even near its end, Hirnyk was consistently strong-willed, independent, and always in control of her own decisions. In particular, Hirnyk was aware of, and in control, of her financial affairs. Weiblinger, on the other hand, was not financially astute.

Weiblinger testified that Hirnyk directed Weiblinger to take the funds out of Hirnyk's name in an effort to reduce her assets for Medicaid eligibility.

Weiblinger testified that she did so, and never treated the funds as her own. Rather, she always believed that Hirnyk owned and controlled the funds. Again, the orphan's court evidently found Weiblinger's testimony credible.

Moreover, we note that Weiblinger already held the right of survivorship and would receive the money upon Hirnyk's death. Thus, there was no reason for her to move the funds, unless directed to do so by Hirnyk. Additionally, Weiblinger returned the funds to account 0168 substantially intact, which is consistent with the orphan's courts conclusion that Weiblinger did not engage in self-dealing.

In this issue, Piotrowski also challenges Weiblinger's authority to gift herself funds. We conclude that this argument is not properly before us. Weiblinger argues Piotrowski did not raise the power of attorney issue her 1925(b) statement. Therefore, Piotrowski has waived her power of attorney claim. Pa.R.A.P. 1925(b); *see Tong-Summerford*, 190 A.3d at 649.

In her third and final appellate issue, Piotrowski contends that the trial court erred in not surcharging Weiblinger for her actions with respect to the funds held in Citizens Bank account 0168.

Where the record substantiates a finding of self-dealing, the court may properly surcharge an individual for any amount he accepted in violation of his fiduciary duty. *See In re Estate of Harrison*, 745 A.2d 676, 679 (Pa. Super. 2000). As discussed above, the orphans' court concluded that Weiblinger did not engage in self-dealing with respect to the funds held in

Citizens Bank account 0168. Consequently, the orphans' court could not surcharge Weiblinger for self-dealing.[4]

For the foregoing reasons, we affirm the order of the orphans' court.

Order affirmed.

Judge Shogan joins this Memorandum.

Judge Strassburger files a Dissenting Memorandum.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/16/2019

---

[4] We note that, where there was a basis for surcharge, the orphans' court did so. The orphans' court surcharged Weiblinger $5,000 where Weiblinger acted improperly. This included a surcharge of $2,700 for withdrawals she made from Citizens Bank account 0168, the purpose for which she could not explain. The remaining $2,300 was for improper withdrawals from other accounts. Weiblinger did not appeal these surcharges.