### M.C. AND E.K. LEES, INC., a Pennsylvania Corporation

v.

### W.R. CAPENOS, a/k/a Warren Capenos, an individual, and Tax Claim Bureau of The County of Butler, a governmental entity.

### Appeal of: W.R. Capenos, a/k/a Warren Capenos.

Commonwealth Court of Pennsylvania.

Argued April 13, 2015.

Decided July 2, 2015.

---

Alex J. Baumler, Cranberry Township, for appellant Tax Claim Bureau of The County of Butler.

Lawrence P. Lutz, Butler, for appellant W.R. Capenos.

Ronald W. Coyer and Amy E. Molloy, Slippery Rock, for appellee M.C. and E.K. Lees, Inc.

BEFORE: BERNARD L. McGINLEY, Judge, and PATRICIA A. McCULLOUGH, Judge, and ROCHELLE S. FRIEDMAN, Senior Judge.

OPINION BY Judge BERNARD L. McGINLEY.

In these consolidated actions[1] Butler County Tax Claim Bureau (Tax Claim Bureau) and judicial tax sale purchaser, Warren Capenos (Capenos) (collectively "Appellants"), appeal directly from the Findings of Fact, Conclusions of Law and Verdict entered by the Court of Common Pleas of Butler County (trial court) in favor of M.C. and E.K. Lees, Inc. (Appellee).

Appellee has filed a Motion to Quash Appellants' appeals on the grounds that they failed to file post-trial motions pursuant to Pennsylvania Rule of Civil Procedure No. 227.1(c). In the alternative, Appellee argues that the Tax Claim Bureau's appeal from the entry of judgment pursuant to Rule 903(a) of the Pennsylvania Rules of Appellate Procedure was untimely.

### Factual Background

The property at issue consists of 122 acres in Butler County and the fee is divided (Property). In 1941, the title to the oil and gas rights beneath the Property was severed from the surface and mineral rights by Deed wherein Earl H. Morris and Kelsie Morris, husband and wife, conveyed what is now known as Parcel No. 220–3F96–33–0000, to A.L. Starcher and C.B. Starcher, husband and wife, "reserving to the grantor, the said Earl H. Morris, his heirs, and assigns, all the oil and gas underlying the within described property, together with the right to use such portions of said land as may be required to operate for oil and gas." Deed at 1; Reproduced Record (R.R.) at 101a. In 1948, Earl H. Morris conveyed what is now known as Parcel No. 220–3F96–34–0000, to Porter McCandless, "Excepting and Reserving therefrom, to the said Earl H. Morris, his heirs and assigns all the oil and gas underlying the above described property." Deed at 1; R.R. at 35a.

Upon the death of Earl H. Morris, Kelsie Morris devised her oil and gas interests to her stepson, William L. Morris (Morris).

In the meantime, in 1968, the surface rights in the Property came to belong to the "Lees" family.[2]

---

1. Appeal of W.R. Capenos a/k/a Warren Capenos was docketed in this Court at No. 809 C.D. 2014. The Butler County Tax Claim Bureau's Appeal was docketed in this Court at No. 976 C.D. 2014. W.R. Capenos a/k/a Warren Capenos filed another Notice of Appeal at 1302 C.D. 2014, which this Court dismissed on August 22, 2014, as duplicative of the appeal at No. 809 C.D. 2014.

2. The Lees family owns Appellee corporation.

The oil and gas interests were separately assessed by the Butler County Tax Assessment Office. Morris received tax bills for his oil and gas interests. However, he never paid taxes on his oil and gas interests pursuant to the provisions of the Real Estate Tax Sale Law (RETSL).[3]

The September 8, 1997, Tax Upset Sale did not result in a sale.

One year later, on September 2, 1998, the Tax Claim Bureau filed a Petition for a Judicial Sale free and clear of all liens. Morris was personally served at his residence by the Sheriff with a Rule to Show Cause why the oil and gas interests beneath the Property should not be sold. Morris did not attend or raise any objection at the hearing on the Rule.

A Judicial Tax Sale was held on December 23, 1998. Appellant Capenos purchased the oil and gas rights beneath the Property. By Deed dated December 23, 1998, the Tax Claim Bureau conveyed to Capenos the severed oil and gas interests beneath Parcel No. 220–3F96–33–0000 and Parcel No. 220–3F96–34–0000. Capenos then executed an Oil and Gas Lease with Shell/SWEPI, LP for the oil and gas rights beneath the Property ("Lease"). The Lease was recorded.

On January 1, 1999, Morris received and signed redemption notices regarding the December 23, 1998, Judicial Sale.

The two Deeds transferring title to the oil and gas interests beneath the Property to Appellant Capenos were recorded on December 23, 1998, and May 17, 1999.

Morris took no further action for thirteen years, until June 5, 2012, when he was approached by Earl K. Lees (Lees), the majority shareholder of Appellee. Morris executed a Quit Claim Deed purporting to convey his oil and gas interests to Appellee for $1.

On July 24, 2012, Appellee filed a Complaint against Capenos and the Tax Claim Bureau (Appellants) seeking to "quiet title," set aside the Deeds from the Tax Claim Bureau to Appellant Capenos, a declaration that Appellee was the true owner of the oil and gas interests beneath the Property, a declaration that the Lease was invalid, as well as causes of action in trespass, conversion and nuisance. Appellee also sought a declaration that the *ad valorem* tax on Morris's oil and gas interests was unconstitutional under *Independent Oil and Gas Association of Pennsylvania v. Board of Assessment Appeals*, 572 Pa. 240, 814 A.2d 180 (2002). Complaint; R.R. at 3a–28a.

Appellants filed an Answer and New Matter to the Complaint. Appellants also filed a Motion for Summary Judgment based on the statute of limitations which was denied by the trial court. The parties conducted discovery and depositions.

A two-day non-jury trial was held on March 26 and 27, 2014.

At trial, Appellee attempted to demonstrate that its predecessor-in-interest, Morris, was never divested of his interests based upon the improperly conducted Upset Tax Sale on September 8, 1997, which violated Morris's due process rights. Appellee argued that when Morris conveyed his oil and gas interests to Appellee by Deed dated June 5, 2012, and recorded June 7, 2012, Appellee became the rightful owner of the oil and gas interests beneath the Property.

Appellee presented the testimony of Morris who testified that he received the tax bills but made the decision, for financial reasons, not to pay the bills. Notes of Testimony, March 26, 2014, (N.T. 3/26/14),

---

**3.** Act of July 7, 1947, P.L. 1368, *as amended,* 72 P.S. §§ 5860.101–5860.803.

42; R.R. at 954a. Morris knew that if he failed to pay the tax bills that his oil and gas interests would be sold at a tax sale. N.T. 3/26/14 at 43; R.R. at 955a. Morris did not recall receiving notice of the Upset Tax Sale. Morris admitted that he was personally served by the Sheriff with Notice of the Judicial Sale. Morris knew afterwards that a Sheriff's sale had taken place. N.T. 3/26/14 at 51; R.R. at 963a. He received the Redemption Notice and took no action until 2012 when he was contacted by Lees on behalf of Appellee. *Id.* Lees asked Morris to enter into an agreement whereby Morris would relinquish any rights he had in the oil and gas beneath the Property in exchange for thirty-percent of the proceeds of the gas lease that Lees recently entered into with Shell Western E & P Inc. also known as "SWEPI."

Lees testified that Appellee was an S corporation; fifty-one percent of which was owned by Lees, and the other forty-nine percent was owned by his daughter. N.T. 3/26/14 at 60; R.R. at 972a. Lees testified that Appellee owned the surface and mineral rights of the Property on which it operated a nine-hole golf course. In 2011, Lees became concerned about "unconventional horizontal drilling" and the impacts it could have on the surface rights of the Property. Lees contacted Capenos, the judicial sale purchaser, who informed Lees that he intended to lease the gas rights. Lees "got mad" after he talked to Capenos and contacted Butler County Commissioner, William McCarrier. N.T. 3/26/14 at 71. Lees learned from McCarrier that something was "wrong" with the sheriff's sale and that was when Lees contacted Morris. Appellee and

Morris executed a Quit Claim Deed on June 5, 2012, whereby Morris purported to transfer his oil and gas rights under the Property to Appellee. Quit Claim Deed, June 5, 2012, at 1, R.R. at 1337a.

The Tax Claim Bureau's position was that it complied with all statutory notice requirements for the September 8, 1997, Upset Tax Sale and title to the oil and gas rights rightfully vested in Appellant Capenos.

The Tax Claim Bureau produced copies of the publications in the Butler County Legal Journal and the publication notice in a Butler County newspaper of general circulation. However, no other records related to notice could be produced as evidence that proper mailing was sent to Morris or that both parcels of the Property were properly posted.[4]

The Director of the Tax Claim Bureau, Edward Rupert (Rupert), explained that some records pertaining to the Upset Tax Sale were discarded by a Bureau employee in August of 2003, who was reorganizing and purging Rupert's files while Rupert was on vacation. N.T. 3/26/14 at 105–106; R.R. at 1017a–1018a.

Rupert believed that copies of some, but not all, missing documents were available in the files kept by the Butler County Prothonotary. Two documents that were not available in the Prothonotary's files were: (1) the actual signed green restricted delivery return receipt card (because there were simply too many of these to file with the Prothonotary) or the entire mailing piece if it came back unclaimed; and (2) the Affidavit of Posting (which does not get filed).

---

**4.** Harold Rader (Rader) *testified that he was the posting officer in 1997. He recalled posting one of the parcels with a yellow 9 by 12 card on a stake about ten feet onto the Prop-* *erty near the number three hole on the golf course.* H.T. 3/26/14 at 136–138; R.R. at 1048a–1050a.

Counsel for Capenos requested a recess to review and make copies of documents in the Prothonotary's files. Counsel for all parties reviewed and selected records for copying. The docket entries for the 1997 Upset Tax Sale and the actual publication from the Butler Eagle were copied and marked as Exhibit A. Exhibit B contained the same information for the 1998 Judicial Sale.

When the trial resumed on March 27, 2014, Appellee objected to the admission of Exhibits A and B on the grounds that admission of this evidence would be prejudicial because it was not identified in discovery. The trial court sustained Appellee's objection and Capenos was foreclosed from introducing into evidence the documents to support the Bureau's position that the statutory notice requirements were met. However, the trial court took judicial notice of two Orders signed by Judge O'Brien dated September 25, 1997, and October 30, 1997, which "confirmed" the Upset Tax Sale of September 8, 1997.

Rupert was called back to the stand. Counsel for Capenos used Exhibits A and B to refresh Rupert's recollection. Rupert testified that all statutory notices of the Upset Tax Sale were published, posted, and sent to Morris by certified and regular mail. Even though the Bureau's files did not contain the actual signature card or proof of mailing, Rupert knew that all statutory notice requirements were met for the Upset Tax Sale. He knew this because his signature appeared on the "Consolidated Return of Sale" filed with the Prothonotary which indicated in Paragraph 2 that Morris was served with notice of the upset sale. Notes of Testimony, March 27, 2014 (N.T. 3/27/14) at 20–26; R.R. at 1109a–1115a. Rupert explained that before he signed the Verification on the Consolidated Return of Sale, he would have reviewed the personal service, certified mail, advertising and posting of the properties. N.T. 3/27/14 at 51–52; R.R. at 1140a–1141a. Rupert did not have personal recollection of reviewing the Morris file, but he would not have signed the verification if he did not believe the requirements were met. N.T. 3/27/14 at 50; R.R. at 1147a.

After the trial, Appellant Capenos filed a "Motion to Open Record for Submission of Additional Evidence" namely, Exhibits A and B. Motion to Open Record at 1; R.R. at 1162a. The trial court heard oral argument on April 30, 2014, after which it granted Capenos' Motion.

On May 7, 2014, the trial court entered Findings of Fact, Conclusions of Law and Verdict in favor of Appellee. The trial court found that there was no proof that Morris was personally served with Notice of the Tax Upset Sale. It found that the Tax Claim Bureau "never provided certified and/or first class mailings to Morris indicating the time, date, location and amount his properties would be sold for at the alleged Upset Tax Sale." Findings of Fact, Conclusions of Law and Verdict, May 7, 2014, Finding of Fact (F.O.F.) 26 at 6. The trial court found that "there are no records of the September 8, 1997, Upset Sale." F.O.F. 18 at 5. The trial court further found that "The Butler County Tax Claim Bureau has no business records and/or files pertaining to the certified and/or first class mailings to William Morris, advertisement in two newspapers of general circulation and/or posting of the subject property." F.O.F. 19 at 5. Therefore, no valid Upset Tax Sale of the oil and gas interests ever occurred. The trial court concluded that Appellee, as owner of the surface rights to the Property, was entitled to, but did not receive, notice of the Upset Tax Sale and the Judicial Sale. Conclusion of Law (C.O.L.) 8–13 at 11–12. With respect to posting, the trial court

found that Mr. Rader only posted one of the parcels with one sign attached to a stake. F.O.F. 30 at 6. The trial court concluded as a matter of law that Morris conveyed his interest in the oil and gas rights beneath the Property to Appellee and that Appellee met its burden of showing *prima facie* title. C.O.L. 5 at 11.

On May 12, 2014, Capenos filed a Notice of Appeal in this Court at No. 809 C.D. 2014, directly from the trial court's May 7, 2014, Verdict. On May 15, 2014, the trial court directed Capenos to file a Concise Statement of Errors Complained of on Appeal which was filed by Capenos on June 5, 2014.

On June 10, 2014, the Tax Claim Bureau filed its Notice of Appeal in this Court at No. 976 C.D. 2014, directly from the trial court's May 7, 2014, Verdict. On June 19, 2014, the Tax Claim Bureau filed its Concise Statement of Errors Complained of on Appeal.

On June 26, 2014, Appellee filed a Praecipe to Enter Judgment against Appellants. The trial court entered Judgment that same day.

On July 3, 2014, the trial court issued its Pa.R.A.P. 1925(a) Opinions.

Capenos filed another Notice of Appeal from the Entry of Judgment in this Court at 1301 C.D. 2014 on July 28, 2014. By order dated August 22, 2014, this Court quashed the appeal at 1301 C.D. 2014 as duplicative of Capenos' appeal at 809 C.D. 2014.

### APPELLEE'S MOTION TO QUASH

*Did Appellants waive all issues on appeal because they did not file Post–Trial Motions?*

Appellee contends that Appellants' appeals to this Court should be quashed because they failed to file Post–Trial Motions

within ten days of the trial court's Verdict in accordance with Pa.R.C.P. No. 227.1(c), which provides: "post-trial motions shall be filed within ten days after (1) verdict, discharge of the jury because of inability to agree, or nonsuit in the case of a jury trial; or (2) notice of nonsuit or the filing of the decision in the case of a trial without jury."

 "Pa.R.C.P. [No] 227.1 requires parties to file post-trial motions in order to preserve issues for appeal. If an issue has not been raised in a post-trial motion, it is waived for appeal purposes." *L.B. Foster Co. v. Lane Enters., Inc.,* 551 Pa. 307, 710 A.2d 55, 55 (1998). "Only issues which a party specifically raises in its post-trial motions are preserved and will be considered on appeal." *Burrell Educ. Association v. Burrell School District,* 674 A.2d 348, 350 (Pa.Cmwlth.1996). "The purpose for Rule 227.1 is to provide the trial court with an opportunity to correct errors in its ruling and avert the need for appellate review." *Chalkey v. Roush,* 569 Pa. 462, 805 A.2d 491, 494 (2002).

Appellants counter by arguing that Appellee's Complaint was, for all intents and purposes, a "statutory appeal" which challenged the Judicial Sale based on defective notice pursuant to Section 607 of the RETSL, 72 P.S. § 5860.607. Appellants characterize their appeals from the trial court's May 7, 2014, Findings of Fact, Conclusions of Law and Verdict as taken "from a final adjudication or determination of a local agency." They argue that Pa. R.C.P. No. 227.1(g) prohibits the filing of post-trial motions in statutory appeals.

Appellants are partially correct in an imprecise manner. Pa.R.C.P. No. 227(g) prohibits post-trial motions in statutory appeals. That Rule provides: "[a] motion for post-trial relief may not be filed *in an appeal from the final adjudication or determination of a local agency* or a Com-

monwealth agency *as to which jurisdiction is vested in the courts of common pleas."* (Emphasis added.) The Explanatory Comment–1989 states: "New subdivision (g) prohibits post-trial proceedings in a statutory appeal. The decision of the court in all such cases will be a final, appealable order."

It is not as clear, however, that Appellants' *civil Complaint* was the equivalent of a "statutory appeal" under Section 607 of the RETSL, 72 P.S. § 5860.607, subject to Pa.R.C.P. No. 227(g).

■ Section 607 of the RETSL, 72 P.S. § 5860.607 provides "a statutory procedure whereby the adequacy of the notice can be raised and decided." *Hoover v. Bucks County Tax Claim Bureau,* 44 Pa.Cmwlth. 529, 405 A.2d 562, 564 (1979). Specifically, under Sections 607(a)-(d) of the RETSL, 72 P.S. § 5860.607(a–d), a court of common pleas is required to enter a decree nisi confirming a tax sale, to which objections challenging the legality of the sale may be filed by interested parties. This, however, is not the *exclusive* method to challenge the notice. Courts of equity continue to have the power to inquire into the issue even after the judicial confirmation of a tax sale. *Hoover,* 405 A.2d at 564. In this regard, Section 607(g) of the RETSL, 72 P.S. § 5860.607(g) provides: "the validity of the tax sale shall not be inquired into *"judicially in equity or by civil proceedings* by the person in whose name such property was sold, by a grantee or assignee, by any lien creditor or by any other person, except with respect to the giving of notice under the act ..." (Emphasis added.) Accordingly, a person who wishes to challenge the tax sale may do so: (1) by filing exceptions or objections within thirty days after the trial court has made a confirmation nisi under the RETSL; *or* (2) by filing of an action in equity or civil proceeding. *Piper v. Tax Claim Bureau of*

*Westmoreland County,* 910 A.2d 162 (Pa. Cmwlth.2006); *Fawber v. Dauphin County Tax Claim Bureau,* 117 Pa.Cmwlth. 521, 543 A.2d 1288, 1290 (1988).

■ Appellants contend that Appellee's civil Complaint was "the same type of case" as a "statutory appeal" under Section 607 of the RETSL, 72 P.S. § 5860.607. They argue that post-trial motions were prohibited so their appeals directly from the trial court's May 7, 2014, Verdict were proper.

Appellants rely on *Eachus v. Chester County Tax Claim Bureau,* 148 Pa. Cmwlth. 625, 612 A.2d 586 (1992), and argue that post-trial motions are an inappropriate response to an order setting aside a tax sale.

In *Eachus,* property owned by Lynn Eachus (Eachus) had been sold by the Chester County Tax Claim Bureau at a tax sale on September 14, 1987. Eachus filed exceptions and objections to the September 14, 1987, tax upset sale. On July 19, 1990, the trial court entered an order setting aside the sale. The successful bidder filed a motion for post-trial relief, instead of a direct appeal of the July 19, 1990, order which set aside the sale. The Court of Common Pleas of Chester County struck the bidder's post-trial motion, and, in the meantime, the time for filing an appeal directly from the July 19, 1990, order expired. The bidder appealed to this Court from the Chester County Court of Common Pleas' order striking the post-trial motion. This Court quashed the appeal as untimely and held that the Chester County Court of Common Pleas' July 19, 1990, order setting aside the sale was final and appealable and under Pa.R.C.P. No. 227(g), a motion for post-trial relief was inappropriate.

The difference between *Eachus* and this controversy is that Eachus (the owner of

the property who lost her property interests in the tax sale) had filed exceptions and objections to the September 14, 1987, tax upset sale pursuant to Section 607 of the RETSL, 72 P.S. § 5860.607. Eachus' exceptions and objections to the Chester County Tax Claim Bureau's tax upset sale pursuant Section 607 of the RETSL, 72 P.S. § 5860.607, constituted a "statutory appeal from a final adjudication or determination of a local agency [i.e., the September 14, 1987 tax upset sale] as to which jurisdiction is vested in the courts of common pleas." Pa.R.C.P. No. 227(g). In other words, Eachus proceeded *under the statutory procedure* for challenging the tax upset sale.[5]

Here, however, Appellee filed a civil Complaint. A statutory appeal and a civil Complaint are two different forms of action which involve different rules and procedures. The causes of action, seeking both equitable and legal relief, which were raised in Appellee's civil Complaint, were resolved after a non-jury trial.

 Our Supreme Court has held that the post-trial motion requirements set forth in Pa.R.C.P. No. 227.1 are mandatory in both law and equity matters. *Chalkey*, 805 A.2d at 497. The Supreme Court held that "there is no excuse for a party's failure to file post-trial motions from a trial court's order following an equity trial." *Id.*

> Under Rule 227.1, a party must file post-trial motions at the conclusion of a trial in *any* type of action in order to preserve claims that the party wishes to raise on appeal. In other words, a trial court's order at the conclusion of a trial, whether the action is one at law or in equity, simply cannot become final for purposes of filing an appeal until the court decides any timely post-trial motions.

*Id.* at 496 (Emphasis in original.)

Consequently, when Appellants failed to file post-trial motions within ten days following the trial court's May 7, 2014, order, the issues they sought to raise in their Concise Statements of Errors Complained of on Appeal were waived.[6]

---

**5.** *See also Schreiber v. Butler County Tax Claim Bureau*, 117 Pa.Cmwlth. 588, 545 A.2d 950 (1988) (holding that Pa.R.C.P. No. 227.1 pertaining to post-trial relief did not apply where the proceedings were initiated by petition to set aside a tax sale brought under Section 610 of the RETSL, 72 P.S. § 5860.610, because that was a statutory proceeding, not a civil action); *Schuylkill County Tax Claim Bureau v. Tremont Township*, 104 Pa.Cmwlth. 338, 522 A.2d 102 (1987) (petition filed pursuant to Section 613 of the RETSL, 72 P.S. § 5860.613, was a statutory appeal, and the proceeding in the common pleas court was a hearing rather than a trial. Therefore, post-trial motions were improperly filed and this Court quashed the appeal from their denial as untimely.)

**6.** Those issues were:

 1. Are Appellee's claims barred by the applicable statute of limitations when they were filed 13 years after a valid Judicial Sale of which Morris (the owner) had actual notice?

 2. Did the trial court err when it concluded that the June 5, 2012, Deed transferred title to Appellee when the Grantor (Morris) had intentionally refused to pay taxes and let the Property be sold at a Judicial Sale?

 3. Did the trial court err in finding that the notice requirements for the Tax Upset Sale and Judicial Sale were not met when the Appellant Butler County Tax Claim Bureau fully complied with all statutory requirements?

 4. Did the trial court err in failing to permit the admission of evidence of notice based upon the best evidence rule when the Appellant Capenos attempted to present oral evidence regarding documents inadvertently lost or destroyed by another party?

 5. Did the trial court err in failing to take judicial notice of documents from a prior matter involving the same parties and

Appellants nevertheless attempt to convince this Court that the Motion to Open the Record filed by Capenos was sufficient to serve as a post-trial motion. They argue that where an appellant preserves his issues at a pre-trial, and during the proceedings, and raises them in a post-trial motion so that the trial court understands the issues, a violation of Pa.R.C.P. No. 227.1 does not require a waiver. *County of Delaware v. J.P. Mascaro & Sons, Inc.*, 830 A.2d 587 (Pa.Super.2003).[7] Appellants assert that if they were required to file post-trial motions, Capenos' Motion to Open the Record to submit additional documentation regarding notice requirements, filed in the trial court after the verdict was sufficient to operate as a post-trial motion even though it was not captioned as such. After a hearing on the motion, the trial court maintained its position that notice was deficient. This Court is not convinced.

First, the purpose of a post-trial motion is to provide the trial court with notice of any issues remaining after trial so that the trial court has an opportunity to respond, prior to any appeal being perfected. The object is to permit the trial court the opportunity to review and reconsider the determination that it made at trial and to correct the error if necessary.

*Jackson v. Kassab*, 812 A.2d 1233 (Pa.Super.2002), *appeal denied*, 573 Pa. 698, 825 A.2d 1261 (2003); *Weir by Gasper v. Ciao*, 364 Pa.Super. 490, 528 A.2d 616 (1987), *order aff'd*, 521 Pa. 491, 556 A.2d 819 (1989). In order to fully effectuate such purpose, any issue raised in a motion for post-trial relief must be briefed and argued to the trial court. *Browne v. Commonwealth of Pennsylvania, Department of Transportation*, 843 A.2d 429 (Pa. Cmwlth.), *appeal denied*, 581 Pa. 681, 863 A.2d 1149 (2004).

Here, the Motion to Open the Record was filed *before* the trial court's Verdict. Therefore, it did not serve as a motion for post-trial relief. In the case of a trial without a jury or an equity trial, a post-trial motion must be filed within ten days *after* notice of a nonsuit, or the filing of the decision or adjudication. Pa.R.C.P. No. 227.1(c)(2). Further, the only matter referenced in the Motion to Open the Record was the trial court's refusal to admit Exhibits A and B. Therefore, the Motion to Open the Record did not properly preserve any issues for appeal as Capenos did not discuss any other issue other than the trial court's refusal to admit this evidence at trial.[8]

interests, as required by Pa. Rule of Evidence 201(c)(2)?

6. Did the trial court err by overturning the decisions made by prior judges of the Butler County Court of Common Pleas at case Nos. MSD 1997–40299 and MSD 1998–40261 made over a decade ago?

7. In *Mascaro*, Mascaro Corporation filed a post-trial motion but did not allege any specific errors. Delaware County argued that Mascaro's appeal should be quashed because Pa. R.C.P. No. 227.1 requires that a post-trial motion must specify the grounds for relief and how the issues were preserved. The Superior Court deemed Mascaro's issues to be properly preserved because Mascaro's issues

were preserved at pre-trial, and during trial and the court had no difficulty identifying the issues raised for review and addressed them in its opinion denying post-trial relief. Unlike in *Mascaro*, Appellants did not file any post-trial motions which provided the trial court with an opportunity to reconsider its determination and correct any alleged errors.

8. This Court also notes that the filing of a statement of errors complained of does not excuse the failure to file post-trial motions, and does not revive or preserve issues that are waived for failure to file post-trial motions. *Diamond Reo Truck Co. v. Mid–Pacific Industries, Inc.*, 806 A.2d 423 (Pa.Super.2002).

Accordingly, Appellee's Motion to Quash Appellants' Appeals is granted.

### ORDER

AND NOW, this 2nd day of July, 2015, M.C. and E.K. Lees' Motion to Quash the Appeals of W.R. Capenos, a/k/a Warren Capenos and the Tax Claim Bureau of the County of Butler in the above-captioned matter is GRANTED and said appeals are hereby QUASHED.