IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Raymond I. Thomas and Dawn M.   :
Thomas, husband and wife,   :
          Appellants   :
   :
      v.   : No. 1352 C.D. 2019
   : ARGUED: November 12, 2020
County of Bucks Tax Claim Bureau   :

BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
            HONORABLE CHRISTINE FIZZANO CANNON, Judge (P)
            HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                    FILED: December 29, 2020

Appellants Raymond I. Thomas and Dawn M. Thomas, husband and wife, (collectively, Appellants) appeal from the Court of Common Pleas of Bucks County's (Common Pleas) August 22, 2019 order,[1] which denied Appellants' Petition to Vacate and Set Aside Upset Tax Sale (Petition to Set Aside) and confirmed Appellee County of Bucks Tax Claim Bureau's (Bureau) December 12, 2017 upset sale of Appellants' property, located at 284 Wyandotte Road, Fairless Hills, Pennsylvania, (Property) to ADR Investments, LLC (ADR). After thorough review, we vacate Common Pleas' August 22, 2019 order and remand this matter for further proceedings.

## I. Facts and Procedural History:

According to Appellants, Mr. Thomas was diagnosed with leukemia at some point in late 2014. Appellants' Br. at 6. Mrs. Thomas assumed control of handling

---

[1] This order was dated August 15, 2019, but was not sent to the parties until August 22, 2019.

the couple's finances while Mr. Thomas was receiving treatment and paid the Property's county and municipal real estate taxes in 2015, but failed to do so for the Property's school taxes. *Id.* Appellants claim that Mrs. Thomas suffered from a mental illness, which both required her hospitalization and "rendered [her] incompetent and unable to understand the meaning and significance of documents sent to her." *Id.*

On July 14, 2017, the Bureau sent notices via United States Postal Service (USPS) certified mail to both Appellants individually, informing them that they owed $7,002.12 in unpaid taxes and that the Property would consequently be listed for purchase at an upset tax sale on September 19, 2017, unless Appellants paid at least 50% of that amount before then. Reproduced Record (R.R.) at 153a-56a.[2] Both notices were subsequently returned by the USPS to the Bureau as "unclaimed" on August 14, 2017. *Id.* at 155a-56a.

On August 17, 2017, the Bureau placed notices regarding the Property's impending sale in the Daily Intelligencer (a newspaper published in Doylestown, Bucks County's seat), The Philadelphia Inquirer, and the Bucks County Law Reporter. *Id.* at 158a-60a.

On August 29, 2017, Mrs. Thomas was personally served with notice of the impending September 19, 2017 upset tax sale. *Id.* at 162a. This notice states that the sale was in response to delinquent taxes and that the upset price for the Property was $7,002.12, but does not indicate the tax year, or the type of taxes, to which this upset price or the then-looming sale corresponds. *Id.* That same day, the Property was posted with a "Notice of Public Tax Sale" that was identical to that served upon Mrs.

---

[2] These notices do not include information about which specific unpaid tax bills served as the basis for this sale; rather, they merely state that Appellants owe Bucks County for unpaid taxes and that the approximate upset sale price for the Property is $7,002.12. *See* R.R. at 153a.

Thomas. *Id.* at 164a. Both the personally served and posted notices include language expressly stating that the sale would occur on September 19, 2017, "or any day at which the sale may be adjourned, re-adjourned or continued, for the purpose of collecting unpaid taxes, municipal claims and all costs incident thereto, the above described real estate for at least the upset price in the amount hereinabove approximately set forth." *Id.* at 162a, 164a. Appellants do not dispute that they received actual notice via personal service upon Mrs. Thomas. *See* Hr'g Tr., 6/11/19, at 15. Indeed, Appellants' attorney represented to Common Pleas that "[Appellants] went to the . . . Bureau to work [their unpaid taxes] out and got an agreement and they were discussing the matter with the . . . Bureau." *Id.* There is nothing in the record, however, supporting this claim that there was some sort of agreement between Appellants and the Bureau regarding payment of the delinquent taxes. Nevertheless, the Property was not listed for purchase, as had been previously scheduled, at the Bureau's September 19, 2017 sale. It does not appear that the Bureau notified Appellants that the upset tax sale of the Property had been continued to a later date. Appellants' Br. at 7.

At an unspecified point, the Bureau petitioned Common Pleas to allow it to sell a large number of properties at upset tax sales scheduled for November 14, 2017, and December 12, 2017, without effecting personal notice of the pending sales upon the properties' owner-occupants. Common Pleas granted this petition on October 17, 2017. R.R. at 118a. It is not clear whether this order relieved the Bureau of its responsibility to so notify Appellants, as both Appellants' names and the Property's address are listed on the roll sheet of affected properties attached to the order, but without explanation, Appellants' names and property are struck through with horizontal lines. *See id.* at 50a.

3

In November 2017, the Bureau posted a notice on the Property, dated November 1, 2017, which was received by Mrs. Thomas. *Id.* at 120a, 125a. This notice stated that Appellants owed a combined total of $3,668.07 for 2016 in unpaid county, municipal, and school taxes, as well as fees, and $3,465.51 in unpaid school taxes and fees for the "prior" year. *Id.* at 125a.[3] This posted notice contained a section, titled "WARNING," that informed Appellants that the Property would be sold at tax sale no earlier than July 1, 2018, if they failed to pay the debts listed on the notice by then, while also making clear that Appellants could retain ownership by making payment at any point before the actual date of sale. *Id.*

On November 30, 2017, the Bureau sent some sort of mailing to each of the Appellants via First Class Mail. *See id.* at 191a. The record does not contain a copy of these mailings, but the parties appear to be in general agreement that they consisted of the same notice that had been posted at the Property and personally served upon Mrs. Thomas on August 29, 2017. *See* ADR's Am. Br. at 3; Appellants' Br. at 7; Bureau's Am. Br. at 5. According to Appellants, Mrs. Thomas interpreted this mailed notice in conjunction with the notice that had been posted at the Property in November 2017, and concluded that "the [Property] would not be exposed to [an upset] tax sale until sometime after July 1, 2018." Appellants' Br. at 7.

On December 12, 2017, the Bureau held an upset tax sale, at which the Property was listed for purchase. *Id.* ADR was the high bidder for the Property, purchasing it for $16,236.23. R.R. at 168a. Appellants claim that Mrs. Thomas

---

[3] This notice does not specify to *which* prior year this $3,465.51 in unpaid taxes pertains; in the blank in which a year or years should be listed, it literally says "prior." R.R. at 125a.

attempted to commit suicide the following day, upon learning of the sale, and that Mr. Thomas was unaware of the tax arrearage until that date. *Id.*[4]

On January 11, 2018, Appellants filed their Petition to Set Aside in Common Pleas. Of note is the fact that Appellants did so before the Property's sale was confirmed *nisi* (*i.e.*, conditionally) by Common Pleas. In their Petition to Set Aside, Appellants argued that the Bureau had failed to conduct the Property's sale in compliance with the Real Estate Tax Sale Law (RETSL).[5] Petition to Set Aside at 3. Specifically, Appellants alleged that the Bureau had failed to provide them with legally adequate notice, did not properly serve them or correctly post the Property, and made representations that misled Appellants into concluding that the Property would not be put up for sale by the Bureau until after July 1, 2018. *Id.* The Bureau then responded in opposition to the Petition to Set Aside on February 12, 2018. On May 22, 2018, ADR filed a Petition to Intervene, which Common Pleas granted pursuant to the parties' joint stipulation on July 30, 2018.

The parties subsequently submitted briefs and documentation, after which Common Pleas held oral argument on June 11, 2019. At the close of argument, Common Pleas informed the parties that the record would remain open "for a couple of weeks" to allow them to "submit any written memos you wish." Hr'g Tr., 6/11/19, at 17. Despite this, Common Pleas entered an order on June 20, 2019, denying the Petition to Set Aside and confirming the Property's sale to ADR. Common Pleas then vacated this order on June 27, 2019, and granted the parties two weeks' leave to file additional briefs. The parties each complied with this order, after which

---

[4] During oral argument in this matter, Appellants' counsel advised our Court that Appellants' home mortgage was paid in full.

[5] Act of July 7, 1947, P.L. 1368, *as amended*, 72 P.S. §§ 5860.101-5860.803.

5

Common Pleas again denied Appellants' Petition to Set Aside and confirmed absolutely the Property's sale on August 22, 2019.

Appellants appealed Common Pleas' order on September 23, 2019.[6] On October 1, 2019, Common Pleas ordered Appellants to file a concise statement of errors complained of on appeal, which Appellants did on October 21, 2019. Common Pleas then issued an opinion in support of its decision on December 6, 2019. In this opinion, Common Pleas stated that its ruling was proper for two reasons. First, the Bureau had "strictly complied" with RETSL's notice requirements regarding the upset tax sale of the Property. Common Pleas Op., 12/6/19, at 3-6. Second, Appellants had not been entitled to an evidentiary hearing regarding their Petition to Set Aside because they had not established a *prima facie* valid challenge regarding the Bureau's compliance with RETSL. *Id.* at 6.

## II. Discussion

On appeal,[7] Appellants raise a multitude of issues, which we summarize as follows: first, Common Pleas erred by concluding that Appellants failed to establish a *prima facie* valid challenge to the Bureau's compliance with RETSL, as Appellants alleged in their Petition to Set Aside that the Bureau did not serve them with notice of the upset tax sale. Appellants' Br. at 13-14. In light of this *prima facie* valid challenge, Common Pleas also erred by failing to hold an evidentiary hearing. *Id.* at 14-17.

---

[6] Appellants' appeal was timely, as the final day of the appeal window fell on a weekend and they filed their appeal with our Court on the first business day thereafter. *See* Pa. R.A.P. 108(a); 1 Pa. C.S. § 1908; 42 Pa. C.S. § 5571(a).

[7] "In tax sale cases, our scope of review is limited to determining whether the trial court abused its discretion, rendered a decision with lack of supporting evidence[,] or clearly erred as a matter of law." *Chester Cnty. Tax Claim Bureau v. Griffith*, 536 A.2d 503, 504 (Pa. Cmwlth. 1988).

Second, Common Pleas erred by denying the Petition to Set Aside and confirming the Property's sale because the Bureau did not notify Appellants that the Property's sale, which had originally been scheduled for September 19, 2017, was rescheduled for December 12, 2017. *Id.* at 19-23. Though Appellants had actual notice of the September 2017 upset tax sale, this did not relieve the Bureau of its legal obligation to give Appellants RETSL-compliant notice about the original sale date; the Bureau's failure to do so deprived it of the power to reschedule the upset tax sale without giving Appellants additional notice. *Id.*

Third, Common Pleas erred by failing to determine whether the Bureau made reasonable efforts, as required by RETSL, to discover Appellants' whereabouts and notify each of them directly of the then-impending September 2017 upset tax sale after the notices sent by certified mail had been returned unclaimed. *Id.* at 23-25.

Finally, Common Pleas improperly disregarded the defective nature of the notice sent by the Bureau to Appellants on November 30, 2017, which did not list the correct date for the upset tax sale. *Id.* at 25-26. Had Common Pleas held an evidentiary hearing, Mrs. Thomas would have testified that this faulty notice, coupled with "other representations by the Bureau regarding her request for a payment plan, le[d] her to belie[ve] the sale was not being held until [2018]." *Id.* at 26.

The process of challenging an upset tax sale is completely statutory in nature. As we have stated before, "[g]enerally, the Pennsylvania Rules of Civil Procedure do not apply to statutory proceedings brought under [RETSL]." *Battisti v. Tax Claim Bureau of Beaver Cnty.,* 76 A.3d 111, 115 (Pa. Cmwlth. 2013). "[W]here a taxpayer commences a statutory proceeding under Section 607 of [RETSL, 72 P.S. § 5860.607], the statutory procedures provided for therein are the exclusive means of

resolving a dispute about an upset tax sale." *Id.* at 114. We have also deemed petitions to set aside an upset tax sale to be functionally synonymous with objections or exceptions filed pursuant to Section 607. *Id.* at 112-13. Thus, as long as the Petition to Set Aside was properly filed in accordance with the applicable legal requirements, then RETSL's statutory requirements should have dictated how Common Pleas handled its adjudication.

ADR argues that the Petition to Set Aside cannot be considered "exceptions" or "objections" to the upset tax sale, as Appellants filed it prior to the Property's sale being confirmed *nisi* by Common Pleas, thereby rendering RETSL inapplicable to the Petition to Set Aside. ADR's Am. Br. at 12-13. We disagree.

> Under Section 601(a) of [RETSL, 72 P.S. § 5860.601(a)], . . . the tax claim bureau must schedule an upset sale of the property between the second Monday of September and October 1 if the property has not been discharged from the tax claims or removed from a tax sale. The Bureau must make a consolidated return to the court of common pleas within sixty days after the actual sale. Section 607(a).[] The court must then confirm the sale *nisi* within thirty days of the consolidated returns, if the sale appears to be regularly conducted. *Id.* Objections or exceptions may be filed within thirty days after the court enters a confirmation *nisi*. Section 607(a.1).

*Pacella v. Washington Cnty. Tax Claim Bureau*, 10 A.3d 422, 428 (Pa. Cmwlth. 2010) (footnote omitted).[8] Per Section 607, in relevant part,

> (a) It shall be the duty of the [tax claim] bureau, not later than sixty (60) days after a sale was held, to make a

---

[8] Objections or exceptions are not the only manner in which an upset tax sale may be challenged, as the individual or individuals whose property has been so sold may elect to challenge the sale "by filing . . . an action in equity or civil proceeding." *M.C. & E.K. Lees, Inc. v. Capenos*, 119 A.3d 1092, 1099 (Pa. Cmwlth. 2015); *Fawber v. Dauphin Cnty. Tax Claim Bureau*, 543 A.2d 1288, 1290 (Pa. Cmwlth. 1988) (such individuals have "the right [to challenge an upset tax sale by filing] a petition to set aside the tax sale under Section 607 of [RETSL] or [by filing] a complaint and proceed[ing] in equity").

8

consolidated return[9] to the court of common pleas of the county[.] . . . Within thirty (30) days of presentation of the consolidated return, if it shall appear to said court that such sale has been regularly conducted under the provisions of [RETSL], the consolidated return and the sales so made shall be confirmed *nisi*. No consolidated return shall be made to the court until notice has been given to the owner under subsection (a.1)(1).

(a.1)(1) Notice shall be given by the bureau within thirty (30) days of the actual sale to each owner by United States certified mail, restricted delivery, return receipt requested, postage prepaid, to each owner at his last known post office address as determined in section 602(e)(2) that the property was sold and that the owner may file objections or exceptions with the court relating to the regularity and procedures followed during the sale no later than thirty (30) days after the court has made a confirmation nisi of the consolidated return.

. . . .

(b) The bureau shall, at the expense of the county, within ten (10) days after confirmation *nisi* of the consolidated return, publish a general notice once in a newspaper of general circulation published in the county, and in the legal journal, if any, designated by rules of court for the publication of legal notices, stating (1) that the consolidated return of the bureau with respect to any such sale for taxes has been presented to the court, (2) giving the date of confirmation *nisi* and (3) that objections or exceptions thereto may be filed by any owner or lien creditor within thirty (30) days after the court has made a confirmation *nisi* of the consolidated return or that the return will be confirmed absolutely.

. . . .

(c) In case no objections or exceptions are filed to any such sale within thirty (30) days after the court has made a

---

[9] The term "consolidated return" is not defined in RETSL, but it appears to be a summary of all the sales that happened at an upset sale on one date or several upset sales on different dates. *See Krawec v. Carbon Cnty. Tax Claim Bureau*, 842 A.2d 520, 523 (Pa. Cmwlth. 2004) ("In October 2002, the [tax claim b]ureau filed its consolidated return for the 2000 year upset tax sale, which was confirmed *nisi* by the trial court.").

> confirmation *nisi*, a decree of absolute confirmation shall be entered as of course by the prothonotary.
>
> (d) Any objections or exceptions to such a sale may question the regularity or legality of the proceedings of the bureau in respect to such sale, but may not raise the legality of the taxes on which the sale was held, of the return by the tax collector to the bureau or of the claim entered. In case any objections or exceptions are filed they shall be disposed of according to the practice of the court. If the same are overruled or set aside, a decree of absolute confirmation shall be entered by the court.

72 P.S. § 5860.607(a)-(d). This statutory language clearly mandates that objections and exceptions must be filed no later than 30 days of the confirmation *nisi* of an upset tax sale. *Id.*, § 5860.607(a.1)(1); *see* 1 Pa. C.S. § 1921(b) ("When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit."). The logical conclusion from this is that a property owner need not wait until an upset tax sale has been confirmed *nisi* to challenge that sale, but may elect to object thereto at any point from the moment the sale has occurred up through 30 days after confirmation *nisi*. Therefore, the Petition to Set Aside, which Appellants filed after the December 12, 2017 upset tax sale and before the sale was confirmed *nisi* by Common Pleas, constituted timely objections or exceptions, the handling of which was governed by RETSL.

Turning to the Petition to Set Aside, it is evident from the substance of the averments contained therein that Common Pleas erred by failing to hold an evidentiary hearing. In their Petition to Set Aside, Appellants pleaded that the Bureau posted the Property in November 2017 with notice that they owed "unpaid real estate taxes for 2016 and the prior years," but that the Bureau would not put the Property up for sale to recoup this debt if it was paid by July 1, 2018. R.R. at 120a. Appellants also averred that, despite this, the Bureau sold the Property on December 12, 2017, and, in doing so, misled them and failed to comply with RETSL's

10

requirements regarding notice and service. *See id.* at 120a-21a. This is certainly enough to establish a *prima facie* valid challenge, through the Petition to Set Aside itself, to the December 12, 2017 sale of the Property, which would consequently necessitate an evidentiary hearing before Common Pleas and shift the burden to the Bureau to establish strict compliance with RETSL's notice requirements. *See Battisti*, 76 A.3d at 113, 115-16.

We come to this conclusion on account of the strangely inconsistent sale notices that the Bureau provided to Appellants, which cannot collectively be deemed as facially compliant with RETSL.

> **The notice requirements of [RETSL] relevant to this case are set forth in Sections 602 and 601(a)(3) of [RETSL]. 72 P.S. § 5860.602;[10] 72 P.S. §**

---

[10] Section 602 of RETSL states, in relevant part:

(a) At least thirty (30) days prior to any scheduled sale the [tax claim] bureau shall give notice thereof, not less than once in two (2) newspapers of general circulation in the county, if so many are published therein, and once in the legal journal, if any, designated by the court for the publication of legal notices. Such notice shall set forth (1) the purposes of such sale, (2) the time of such sale, (3) the place of such sale, (4) the terms of the sale including the approximate upset price, (5) the descriptions of the properties to be sold as stated in the claims entered and the name of the owner.

(b) Where the owner is unknown and has been unknown for a period of not less than five years, the name of the owner need not be included in such description.

(c) The description may be given intelligible abbreviations.

(d) Such published notice shall be addressed to the "owners of properties described in this notice and to all persons having liens, judgments or municipal or other claims against such properties."

(e) In addition to such publications, similar notice of the sale shall also be given by the bureau as follows:

**(Footnote continued on next page…)**

11

**5860.601(a)(3).**[11] In all tax sale cases, the tax claim bureau "has the burden of proving compliance with the

> (1) At least thirty (30) days before the date of the sale, by United States certified mail, restricted delivery, return receipt requested, postage prepaid, to each owner as defined by this act.
>
> (2) If return receipt is not received from each owner pursuant to the provisions of clause (1), then, at least ten (10) days before the date of the sale, similar notice of the sale shall be given to each owner who failed to acknowledge the first notice by United States [F]irst [C]lass [M]ail, proof of mailing, at his last known post office address by virtue of the knowledge and information possessed by the bureau, by the tax collector for the taxing district making the return and by the county office responsible for assessments and revisions of taxes. It shall be the duty of the bureau to determine the last post office address known to said collector and county assessment office.
>
> (3) Each property scheduled for sale shall be posted at least ten (10) days prior to the sale.
>
> (f) The published notice, the mail notice and the posted notice shall each state that the sale of any property may, at the option of the bureau, be stayed if the owner thereof or any lien creditor of the owner on or before the actual sale enters into an agreement with the bureau to pay the taxes in instalments, in the manner provided by this act.

72 P.S. § 5860.602(a)-(f).

---

[11] Per Section 601(a)(3):

> No owner-occupied property may be sold unless the [tax claim] bureau has given the owner occupant written notice of such sale at least ten (10) days prior to the date of actual sale by personal service by the sheriff or his deputy or person deputized by the sheriff for this purpose unless the county commissioners, by resolution, appoint a person or persons to make all personal services required by this clause. The sheriff or his deputy shall make a return of service to the bureau, or the persons appointed by the county commissioners in lieu of the sheriff or his deputy shall file with the bureau written proof of service, setting forth the name of the person

**(Footnote continued on next page…)**

statutory notice provisions." *Krawec*[,. . .], 842 A.2d [at] 523 . . . . **Section 602 requires three different forms of notice to property owners prior to an upset tax sale: publication, posting, and mail**.[] "If any of the three types of notice is defective, the tax sale is void." *Gladstone v. Fe*[*d.*] *Nat*[*'*]*l Mortg*[.] *Ass*[*'n*], 819 A.2d 171, 173 (Pa. Cmwlth. 2003). Notwithstanding our mandate to strictly construe the notice provisions of the law, the notice requirements of Section 602 of [RETSL] are not an end in themselves, but are rather intended to ensure a property owner receives actual notice that his or her property is about to be sold due to a tax delinquency. *Donofrio* [*v. Northampton C*[*n*]*ty. Tax Claim Bureau*, 811 A.2d 1120, 1122 (Pa. Cmwlth. 2002)]. However, **strict compliance with the notice requirements of Section 602 is not required when the [b]ureau proves that a property owner received actual notice of a pending tax sale**. *Sabbeth v. Tax Claim Bureau of Fulton C*[*nty.*]**, 714 A.2d 514, 517 (Pa. Cmwlth. 1998).**

**In addition to the notice requirements of Section 602 of [RETSL], if the property is, as here, occupied by the owner, Section 601(a)(3) of [RETSL] requires that each owner-occupant receive additional notice of a tax sale by personal service.**

. . . .

**The requirements of Section 601(a)(3) are cumulative and apply in addition to the tax claim bureau's obligations to provide notice through publications, posting, and mail. We have said that the General Assembly made a distinction between the notice requirements of Section 602 and 601(a)(3) of [RETSL] due to the General Assembly's "heightened concern**

---

served, the date and time and place of service, and attach a copy of the notice which was served. If such personal notice cannot be served within twenty-five (25) days of the request by the [B]ureau to make such personal service, the [B]ureau may petition the court of common pleas to waive the requirement of personal notice for good cause shown. Personal service of notice on one of the owners shall be deemed personal service on all owners.

72 P.S. § 5860.601(a)(3).

> **for owner[-]occupants being divested of the very property in which they are residing."** *Matter of Tax Sales by Tax Claim Bureau of Dauphin C[nty.]*, **651 A.2d 1157, 1159 (Pa. Cmwlth. 1994).** "By enacting [S]ection 601[(a)(3)], the [General Assembly] expressed a desire to provide a qualitatively different type of notice to an owner[-]occupant and afford such owner [with] increased protection by way of additional notice." *McKelvey v. Westmoreland C[nty.] Tax Claim Bureau*, 983 A.2d 1271, 1274 (Pa. Cmwlth. 2009). **Thus, without receiving a waiver from a trial court, a tax claim bureau may not sell an owner occupied property absent personal notice to an owner-occupant because actual notice of the tax sale does not waive strict compliance with the personal service requirements of Section 601(a)(3).** *Id.*
>
> **In sum, in the absence of actual notice, the [tax claim b]ureau must prove strict compliance with the notice requirements of Section 602 of [RETSL]. Further, and notwithstanding whether a taxpayer received actual notice, the [tax claim b]ureau must demonstrate that it personally served notice on any owner-occupant of the [p]roperty subject to the upset tax sale or obtained a waiver of personal service from the trial court.**

*In re Consol. Reports & Return by Tax Claims Bureau of Northumberland Cnty. of Props.*, 132 A.3d 637, 644-46 (Pa. Cmwlth. 2016) (emphasis added and footnote omitted).

Here, Appellants' admission of receiving actual, advance notice of the September 18, 2017 upset tax sale via personal service upon Mrs. Thomas would, under other circumstances, fatally undermine their claim that the Bureau did not comply with RETSL's notice requirements. *See* Hr'g Tr., 6/11/19, at 15; R.R. at 162a. This actual notice via personal service complied with the strict requirements of Section 601 and thus rendered the requirements of Section 602 waivable. *In re Consol. Reports*, 132 A.3d at 644-46. Furthermore, this actual, advance notice relieved the Bureau of any obligation to notify Appellants that their Property was to

14

be exposed for purchase on December 12, 2017, rather than as originally scheduled on September 19, 2017. *See* 72 P.S. § 5860.601(a) (stating in relevant part, "[t]he bureau shall schedule the date of the sale no earlier than the second Monday of September and before October 1, and the sale may be adjourned, readjourned or continued**.** No additional notice of sale is required when the sale is adjourned, readjourned or continued if the sale is held by the end of the calendar year.").[12] Though this admission occurred well after Appellants filed their Petition to Set Aside, it establishes that the Bureau perfected legally adequate notice upon Appellants, which would normally render unnecessary any need on Common Pleas' part to hold an evidentiary hearing.

However, the notices that were posted at the Property and mailed to Appellants in November 2017 complicate things significantly. As already mentioned, the posted notice indicated that Appellants' tax arrearage was for 2016 and "prior" years, while also expressly stating that the Property would not be exposed to an upset tax sale until after July 1, 2018. R.R. at 125a. In addition, the mailed notice informed Appellants that the Property would be made available for purchase either at the September 19, 2017 upset tax sale or on another legally acceptable date. *See* R.R. at 162a, 164a, 191a; ADR's Am. Br. at 3; Appellants' Br. at 7; Bureau's Am. Br. at 5. There is thus a *prima facie* viable argument that the Bureau failed to properly notify Appellants that the Property might be sold at the

---

[12] It is also notable that Appellants claim that Mrs. Thomas responded to this personally served notice by contacting the Bureau and working out a tax payment plan. *See* Hr'g Tr., 6/11/19, at 15. This certainly vitiates Appellants' more recent assertion that Mrs. Thomas' mental health issues "rendered [her] incompetent and unable to understand the meaning and significance of documents sent to her." Appellants' Br. at 6. Curiously, though, there is no evidence in the record that this payment plan exists and neither ADR nor the Bureau make any reference to this putative plan.

December 12, 2017 upset tax sale, due to the contradictory and inconsistent information contained in the Bureau's mailed, personally served, and posted notices.

### III. Conclusion

Therefore, we conclude that Common Pleas erred by denying the Petition to Set Aside without an evidentiary hearing. As such, we vacate Common Pleas' August 22, 2019 order and remand with instructions that Common Pleas shall hold such a hearing. This will allow the parties to present evidence and testimony, thereby enabling Common Pleas to determine whether Appellants relied upon the Bureau's representation that the Property would not be put up for purchase at an upset tax sale until after July 1, 2018, as well as whether such reliance was reasonable under the circumstances.

RETSL and our extant case law do not squarely contemplate a situation such as this one, where a tax bureau initially complies with RETSL's notice requirements but then sends the affected property owner potentially confusing, contradictory, and misleading information. Even so, we conclude this is the appropriate course of action, in recognition of the General Assembly's "heightened concern for owner[-]occupants being divested [through an upset tax sale] of the very property in which

16

they are residing" without sufficient notice. *Matter of Tax Sales by Tax Claim Bureau of Dauphin Cnty.*, 651 A.2d at 1159.[13]

_____
ELLEN CEISLER, Judge

---

[13] This interpretation is in keeping with the dictates of the Statutory Construction Act of 1972:

> When the words of the statute are not explicit, the intention of the General Assembly may be ascertained by considering, among other matters:
>
>> (1) The occasion and necessity for the statute.
>>
>> (2) The circumstances under which it was enacted.
>>
>> (3) The mischief to be remedied.
>>
>> (4) The object to be attained.
>>
>> (5) The former law, if any, including other statutes upon the same or similar subjects.
>>
>> (6) The consequences of a particular interpretation.
>>
>> (7) The contemporaneous legislative history.
>>
>> (8) Legislative and administrative interpretations of such statute.

1 Pa. C.S. § 1921(c).

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Raymond I. Thomas and Dawn M. : 
Thomas, husband and wife, :
            Appellants :
             :
       v. : No. 1352 C.D. 2019
             :
County of Bucks Tax Claim Bureau :

## **O R D E R**

AND NOW, this 29th day of December, 2020, it is hereby ORDERED that the Court of Common Pleas of Bucks County's (Common Pleas) August 22, 2019 order is VACATED. It is FURTHER ORDERED that this matter is REMANDED to Common Pleas with instructions to convene an evidentiary hearing regarding Appellants Raymond I. Thomas and Dawn M. Thomas' Petition to Vacate and Set Aside Upset Tax Sale, in accordance with the foregoing opinion.

Jurisdiction relinquished.

_____
ELLEN CEISLER, Judge